**NOS. 14-1028(L); 14-1037 XAP**

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

### For The District of Columbia Circuit

# WORLD COLOR (USA) CORP., a wholly owned subsidiary of QUAD/GRAPHICS, INC.,

*Petitioner/Cross–Respondent*,

**v.**

# NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross–Petitioner*.

## ON APPEAL FROM THE NATIONAL LABOR RELATIONS BOARD

———————

## PAGE PROOF BRIEF OF PETITIONER/CROSS–RESPONDENT

———————

Ronald J. Holland (Bar No. 55268)
Ellen M. Bronchetti (Bar No. 55264)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
4 Embarcadero Center, 17th Floor
San Francisco, California  94111
(415) 434-9100

*Counsel for Petitioner/Cross–Respondent*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES, AND CORPORATE DISCLOSURE STATEMENT

### (A) Parties and Amici

Based on the knowledge and information reasonably available to Petitioner, the following persons are parties, intervenors, and amici in this Court:

-Petitioner World Color (USA) Corp. ("World Color").  Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Petitioner World Color (USA) Corp. ("World Color") discloses that it is a wholly owned subsidiary of Quad/Graphics, Inc. ("Quad").  World Color is now doing business as QG Printing Corp.  World Color's business includes printing advertisements to be inserted into newspapers.  It was the Respondent in the administrative action before the National Labor Relations Board that resulted in the decision that is the basis for this petition for review.

-Respondent National Labor Relations Board.

This case was not brought in the District Court.  Therefore, no parties, intervenors, or amici appeared in this case before the District Court.  Nor did any other parties, intervenors, or amici appear in the administrative action in front of the National Labor Relations Board.

### (B) Rulings Under Review

The ruling at issue before this Court is that portion of the Order of the National Labor Relations Board in *World Color (USA) Corp. and International*

i

*Brotherhood of Teamsters, Local 715*, 360 NLRB No. 37 (2014), entered on February 12, 2014, finding that Petitioner's policy pertaining to the wearing of baseball caps is overbroad in violation of Section 8(a)(1) of the National Labor Relations Act (codified at 29 U.S.C. § 158(a)). The Order was written by Chairman Pearce and Members Hirozawa and Johnson of the National Labor Relations Board. The ruling at pages 1-3 of the Order is at issue in this appeal. At this time, no official citation for the ruling exists.

### (C) Related Cases

This case has not been previously on review before this Court or any other Court. Counsel for Petitioner World Color (USA) Corp. is unaware of any other related cases currently pending in this Court or in any other court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES, AND CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF CONTENTS ........................................................... iii

TABLE OF AUTHORITIES ....................................................... v

GLOSSARY .................................................................. viii

JURISDICTIONAL STATEMENT ................................................. 1

STATEMENT OF THE ISSUES FOR REVIEW ....................................... 3

STATUTES AND REGULATIONS ................................................. 3

STATEMENT OF THE CASE .................................................... 4

      A.    The Quad Uniform Policy ................................................. 4

      B.    Procedural History ..................................................... 7

SUMMARY OF ARGUMENT ..................................................... 9

STANDING ................................................................. 10

ARGUMENT ................................................................ 11

      A.    Standard of Review ..................................................... 11

      B.    The NLRB Applied the Wrong Legal Standards and Improperly Departed from Established Precedent ................................. 11

            1.    The Board Erred In Concluding That The Hat Policy Is Overbroad ....................................................... 14

2.    Contrary To The NLRB Holding, World Color's Hat Policy Is A Lawful Dress Code And No Special Circumstances Are Necessary For Its Enforcement ................17

    a.    The Hat Policy Is A Lawful Dress Code ........................17

    b.    No Showing Of Special Circumstances Is Necessary ....................................................................22

3.    The Board Erred In Concluding That The Hat Policy Precludes Employees From Wearing Union Insignia...............24

C.    Public Policy Dictates That The Board's Order Must Be Set Aside ....................................................................................26

CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aroostook County Regional Ophthalmology v. NLRB*,
    81 F.3d 209 (D.C. Cir. 1996)........................................................18, 19, 20, 22

*Boise Cascade Corp.*,
    300 NLRB 80 (1990) ....................................................................................25

*Burger King Corp v. NLRB*,
    725 F.2d 1053 (6th Cir. 1984) ...............................................................11, 25

*Great Plains Coca-Cola Bottling Co.*,
    311 NLRB 509 (1993) ........................................................................23, 24, 25

*Griffith Co. v. NLRB*,
    545 F.2d 1194 (9th Cir. 1976) ........................................................................2

*Kovach v. NLRB*,
    229 F.2d 138 (7th Cir. 1956) ..........................................................................2

*Liberty Homes, Inc.*,
    257 NLRB 1411 (1981).................................................................................27

*Litton Fin. Printing v. NLRB*,
    501 U.S. 190 (1991)......................................................................................11

*Mail Contractors of America v. NLRB*,
    514 F.3d 27 (D.C. Cir. 2008)........................................................................11

*Martin Luther Memorial Home, Inc.*,
    343 NLRB 646 (2004) .......................................................................15, 17, 18

*Chief Authorities are Designated by an Asterisk*

*Meijer, Inc.,
    318 NLRB 50 (1995), *aff'd*,
    130 F.3d 1209 (6th Cir. 1997), *reh'g denied*,
    1998 U.S. App. LEXIS 4951 (6th Cir. Mar. 4, 1998) ..........12, 20, 23, 24, 25

*NLRB v. Columbus Marble Works*,
    111 NLRB 1162 (1955), *enf'd by*,
    233 F.2d 406 (5th Cir. 1956) ................................................................26, 27

*NLRB v. Starbucks Corp.*,
    679 F.3d 70 (2d Cir. 2012) ..........................................................................23

*Noah's New York Bagels*,
    324 NLRB 266 (1997) ..................................................................................12

*North Hills Office Servs.*,
    346 NLRB 1099 (2006) ................................................................................25

*Produce Warehouse of Coram, Inc.*,
    329 NLRB 915 (1999) ..........................................................................12, 24

*Republic Aviation v. NLRB*,
    324 U.S. 793 (1945)................................................................22, 23, 24, 25

*Retail Clerks Union, etc. v. NLRB*,
    348 F.2d 369 (D.C. Cir. 1965)....................................................................10

*Sears Roebuck & Co.*,
    300 NLRB 804 (1990)............................................................12, 23, 24, 25

*Stabilus, Inc.*,
    355 NLRB No. 161 (Aug. 27, 2010)...........................................................12

*Titanium Metals Corp. v. NLRB*,
    392 F.3d 439 (D.C. Cir. 2004)....................................................................11

**STATUTES**

29 U.S.C. § 152 ..................................................................................1

29 U.S.C. § 157 ...........................................................3, 7, 8, 9, 15, 16, 28

29 U.S.C. § 158(a)(1) .........................................................3, 4, 8, 13

29 U.S.C. § 160 ..................................................................................2

29 U.S.C. § 160(a) ..............................................................................1

29 U.S.C. § 160(b) ..............................................................................1

29 U.S.C. § 160(c) ..............................................................................1

29 U.S.C. § 160(f) ...........................................................................1, 10

**RULES**

D.C. Cir. R. 28(a)(4) ..........................................................................1

Fed. R. App. P. 15(a)(1) ......................................................................2

Fed. R. App. P. 28(a)(4) ......................................................................1

Fed. R. App. P. 28(a)(5) ......................................................................3

# GLOSSARY

| | |
|---|---|
| ***Employee Guidelines*** | Quad/Graphics, Inc.'s Employee Guidelines for U.S. Employees, which set forth the policies and procedures governing the employment of all Quad/Graphics, Inc.'s employees in the United States, including employees of Petitioner World Color (USA) Corp. |
| ***Hat Policy*** | Part of Petitioner's uniform policy that was challenged by the Government and was the subject of the hearing before the National Labor Relations Board that led to the instant Petition for Review. Quad/Graphics, Inc. implemented the hat policy as part of its uniform policy at all of its facilities nationwide, including the World Color (USA) Corp. facility. |
| ***Order or Board's Order*** | Decision issued by the National Labor Relations Board on February 12, 2014, which is the subject of this Petition for Review. |
| ***Quad*** | Quad/Graphics, Inc., of which Petitioner World Color (USA) Corp. is a wholly-owned subsidiary. |
| ***Quad/Blues*** | Uniform required to be worn by employees of Quad/Graphics, Inc., which consists of navy blue pants, shorts or skirt and a navy blue shirt with the Quad/Graphics, Inc. logo and the employee's name, in addition to other optional components. |
| ***World Color*** | Petitioner World Color (USA) Corp. |

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and Circuit Rule 28(a)(4)), World Color submits that Respondent National Labor Relations Board ("NLRB" or "the Board") had jurisdiction over the underlying dispute which is the subject of this Petition pursuant to 29 U.S.C. §§ 160(a)-(c).  Section 160(a) states that the Board "is empowered to prevent any person from engaging in any unfair labor practice . . . affecting commerce."  Sections 160(b) and (c) give the Board the authority to issue complaints, conduct hearings, and issue orders with regard to a charge that any person is engaging in an unfair labor practice.  The issue before the Board in this case was a labor dispute affecting interstate commerce between an employer and a labor organization as defined by 29 U.S.C. § 152.  (Order at 1, 4.)[1]

The Court has jurisdiction to hear this petition pursuant to 29 U.S.C. § 160(f), which states that any person aggrieved by a final order of the National Labor Relations Board may obtain a review of such order in the United States Court of Appeals for the District of Columbia.  World Color is aggrieved by the Board's Order because it is the entity against whom the Order was entered.  (Order at 1.)

---

[1] References to the reporter's transcript of the July 31, 2013 hearing before the ALJ on this matter are designated as "RT ___"; to Joint Exhibits at that proceeding as "Joint Ex. ___"; and to the Board's Order as "Order at [page number]."

1

This Petition is timely. The Board issued its Order on February 12, 2014. (*Id*.) Federal Rule of Appellate Procedure 15(a)(1) states that "[r]eview of an agency order is commenced by filing, within the time prescribed by law, a petition for review with the clerk of a court of appeals authorized to review the agency order." Neither Rule 15(a)(1) nor 29 U.S.C. § 160, which sets forth the procedure for judicial review of the Board's orders, sets a deadline for the filing of a petition for review. Recognizing this lack of a set deadline, courts have held that "[t]he party challenging the timeliness of a petition must show that more time has elapsed than reasonably necessary and that it was prejudiced by the delay." *Griffith Co. v. NLRB*, 545 F.2d 1194, 1197 n.3 (9th Cir. 1976); *Kovach v. NLRB*, 229 F.2d 138, 141 (7th Cir. 1956). In this case, World Color filed the Petition for Review on February 24, 2014, just twelve days after the Board issued the Order and as soon as reasonably practicable. No prejudice could have resulted from the short time between issuance of the Order and the filing of the Petition. The Petition is timely.

Last, the Petition for Review seeks the Court's review of a final order of the NLRB that disposes of all of the parties' claims. The NLRB issued a final Order holding that World Color violated the National Labor Relations Act ("NLRA" or "the Act") by enacting an overbroad policy that "prohibits employees from engaging in the protected activity of wearing caps bearing union insignia." (Order at 1, n.3.) World Color challenges this conclusion, and this Court's review will

dispose of all related claims.  The NLRB Order also reversed in World Color's favor the administrative law judge's ruling on an unrelated issue, regarding a purported violation of Section 8(a)(1) of the Act based on a supervisor's statement to an employee about the employee's Facebook posts.  The reversal on that issue is not addressed in this Petition and was not appealed by the NLRB.

## STATEMENT OF THE ISSUES FOR REVIEW

Pursuant to FRAP 28(a)(5), World Color submits that the following issues are before the Court for review:

1.  Does Section 7 of the National Labor Relations Act permit an employee to substitute union attire for a uniform or attire required by an employer's lawful, non-discriminatory uniform policy or dress code?

2.  Must an employer establish "special circumstances" to require employees to wear company attire with Company logos in the absence of any evidence that employees are otherwise prohibited from wearing union insignia at work?

## STATUTES AND REGULATIONS

Following is the text of the two main statutes at issue in this appeal:

29 U.S.C. § 157:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be

affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a)(3) of this title.

29 U.S.C. § 158(a)(1):

It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

## STATEMENT OF THE CASE

World Color's facility in Fernley, Nevada prints retail advertisements to be inserted in newspapers. On July 2, 2010, Quad, a multi-national commercial printing corporation based in Sussex, Wisconsin, acquired World Color, including its Fernley location. (RT 40:12-15.)

### A.     The Quad Uniform Policy.

Quad maintains a company-wide uniform policy that applies to all of its facilities and all management and non-management employees nationwide, including at the Fernley facility. (*See* Joint Ex. 2 at 12-13; Joint Ex. 4-5.) The uniform, known as "Quad/Blues," consists of navy blue pants, shorts or a skirt and a navy blue shirt with the Quad logo and the employee's name. Optional clothing under the policy includes vests, t-shirts, hats, and sweaters, all of which may be purchased through Quad's website and contain the Quad logo. (*See id*.) The company uniform policy is set forth in the "Employee Guidelines For U.S. Employees" ("Employee Guidelines"), among other places. (Joint Ex. 2 at 12-13,

4

17.)  The Government does not dispute the lawfulness of Quad's uniform policy. (RT 37:18-38:1, 103:25-104:1, 105:18-106:2, 133:21-22) (the Government conceded that the uniform policy is lawful, "not in dispute" and that it does "not have a problem with an employer asking [its] employees to wear a uniform that depicts a logo of the Company.")

In addition to the uniform policy, some employees have "additional or different" uniform requirements depending on an employee's job classification. (Joint Ex. 2 at 13.)  One of those additional or different uniform requirements is relevant here.  Due to the obvious dangers of bodily injury posed by the printing presses, Quad's production employees are also required to secure to their heads "all hair hanging past the bottom of the collar."  (*See* Joint Ex. 2 at 17; Joint Ex. 5 at 2.)  Further, even if "hair does not hang past the collar but could potentially be caught in equipment, it must be secured with a hairnet or by other means."  (*Id.*)  One "other means" for securing hair is a hat, specifically a baseball cap. Consequently, in mid-2010, Quad decided to formalize a written Company-wide policy allowing hats to be worn as part of the optional portion of the Quad uniform; it applied the policy to all of its facilities throughout the country, including the World Color facility.[2]  (RT 203:1-10, 206:1-4, 207:11-20.)

---

[2] While the policy applies to all Quad facilities in the United States, the Board proceeded against only the Fernley location.

Three departments worked together to formulate this new corporate policy: Safety, Security, and Human Resources. (RT 204:10-205:25, 211:21-212:2.) Safety wanted to ensure "that the hat was appropriate for the production floor, safe, as well as making sure that it could secure hair to the head." (RT 206:5-17.) Security had concerns about gang insignia and symbolism, specifically the colors of the hats. (RT 206:18-207:6.) Human Resources "wanted to make sure the hat aligned with the uniform policy from a presentation standpoint." (RT 207:7-14.)

The hat policy in effect during the relevant period reads as follows:

> All hair hanging past the bottom of the collar must be secured to the head while in the production areas. If hair does not hang past the collar but could potentially get caught in our equipment, it must be secured to the head with a hairnet or by other means. Baseball caps are prohibited except for Quad/Graphics baseball caps with the bill facing forward. Ponytails are strictly prohibited. Facial hair longer than the base of the neck must be secured.

(Joint Ex. 2 at 17.)

While the hat policy is consistent with and is a part of the uniform policy, it is contained in the Safety Section of the Employee Guidelines to which it specifically applies, a few pages after the rest of the uniform policy. (*See* Joint Ex. 2 at 12-13, 17.) Just like the rest of Quad's uniform policy, the hat policy does not allow employees to wear baseball caps displaying non-Quad logos, such as for sports teams, clothing apparel brands, or vacation destinations. (*Id*.) Just like the rest of Quad's uniform policy, the hat policy is not intended to restrict the rights

guaranteed to employees by Section 7 of the NLRA.  Importantly, also like the rest of Quad's uniform policy, the hat policy does ***not*** prohibit employees from wearing union insignia or any clothing or accessories that demonstrate union support.  (*See* Joint Exs. 4 and 5).  For example, rather than wearing a Quad hat, employees can use another safety-compliant device, of any color, with a union or other insignia if they so wish, to secure their hair to their heads.  (*See id*.)

The uniform policy, including the hat policy, was announced to the World Color employees at the Fernley facility on February 8, 2011 and rolled out over the next few weeks.  (RT 208:21-209:6; *see* Joint Exs. 4 and 5.)  A memorandum sent to the employees explained the mandatory requirements of the uniform (Quad shirt/blue pants or skirt) and the optional components available for purchase (jackets and hats).  (Joint Exs. 4 and 5.)

## B.    Procedural History.

The Graphic Communications Conference of the International Brotherhood of Teamsters, Local 715-C, filed an unfair labor practice charge with the NLRB on September 26, 2012.  The case was tried before administrative law judge William Cates on June 4, 2013, in Reno, Nevada.  (Order at 4.)  At the hearing, the Government presented no admissible evidence that World Color has prohibited employees from wearing union insignia on their hats or elsewhere, or even from wearing union hats.  Nor was there any evidence of discrimination.  (*See also*

7

Order at 1 n.3.)  Despite this lack of evidence, on July 31, 2013, the ALJ issued his

Report and Recommendations, finding that Quad's hat policy was separate and

distinct from the uniform policy, discriminatory, and interfered with the exercise of

employees' Section 7 rights.  (RT 11:27-33, 12:11-14, 12:25-28, 13:8.)  World

Color filed exceptions to the ALJ's recommended Order.  (World Color's

Exceptions Brief at 1.)

On February 12, 2014, the Board issued the Order that is the subject of this

Petition, affirming the ALJ's finding in part and reversing it in part.[3]  The Board's

holding relating to the issue in this petition can be found in footnote 3 of its Order.

The NLRB panel held that Quad's hat policy "is overbroad and in violation of Sec.

8(a)(1)," as "the policy on its face prohibits employees from engaging in the

protected activity of wearing caps bearing union insignia" and no special

circumstances exist to justify the prohibition.  (Order at 1 n.3.)  The Board's

holding redefines employees' rights under Section 7 of the Act and bestows on

employees an unfettered Section 7 right to replace Company-required dress or

uniforms with union attire, even in the absence of any discriminatory intent or

enforcement, unless an employer establishes special circumstances to maintain

such a policy.  This is a clear departure from well-settled precedent.  Because of

---

[3] The Board also held that the ALJ erred in finding a violation of Section 8(a)(1)
based on statements allegedly made to an employee.  (Order at 1.)  The NLRB did
not appeal that aspect of the Order and it is not at issue in this Petition for Review.

the Board's failure to follow its own precedent, as well as its erroneous finding that the hat policy is overbroad, World Color filed its Petition for Review.

## SUMMARY OF ARGUMENT

The law has long established that an employer may promulgate and enforce non-discriminatory uniform policies. As a counterbalance, employees are allowed to affix union buttons or other insignia on their uniforms at work. If an employer's policy prohibits employees from wearing union buttons or other items on their uniforms, then in that instance, the Employer must establish "special circumstances" for such a prohibition. Prior to the Board's decision that is the subject of this appeal, however, the Board has never held that an employee has a right under Section 7 of the Act to disregard a Company's non-discriminatory uniform policy or dress code and to wear union attire *in place of* a required uniform. Nor has the Board held, until now, that an employee has such a right unless the employer establishes "special circumstances."

The Board reached this unprecedented conclusion of law even though the evidence in this case did not raise the issue. Here, the government submitted *no evidence* that World Color prohibited employees from wearing union insignia at work. Rather, the Board held simply that the Company violated the Act by requiring that employees wear Company hats as part of their uniform if the employees chose to wear hats at all. In other words, the Board found that

9

employees have a protected right to wear a hat bearing a union logo at work regardless of the employer's dress code. This means that an employer may not establish a uniform or dress code without first demonstrating special circumstances, which is simply not the law. The Board's Order misapplies long-standing Board precedent without any justification and must be set aside.

## STANDING

World Color has standing to bring this Petition for Review pursuant to 29 U.S.C. § 160(f), which states that any person aggrieved by a final order of the National Labor Relations Board may obtain a review of such order. This Court has held that "standing to appeal an administrative order as a 'person aggrieved,' 29 U.S.C. § 160(f), arises if there is an adverse effect in fact, and does not . . . require an injury cognizable at law or equity." *Retail Clerks Union, etc. v. NLRB*, 348 F.2d 369, 370 (D.C. Cir. 1965). In this case, World Color is aggrieved by the Board's Order. The Order has an "adverse effect in fact" on World Color, as the Board ordered World Color to rescind a uniform policy that World Color believes is lawful and to inform its Fernley, Nevada employees that it has violated their rights under federal law. (Order at 3.) World Color thus has standing under *Retail Clerks Union*.

# ARGUMENT

## A.    Standard of Review.

The NLRB's legal conclusions are reviewed *de novo*, and its interpretations of the NLRA are upheld only if they are rational and consistent with the Act. *Litton Fin. Printing v. NLRB*, 501 U.S. 190, 201 (1991).  This Court will "set aside an order [of the NLRB] 'when the Board has failed to apply the proper legal standard . . . or when it has departed from established precedent without reasoned justification."  *Mail Contractors of America v. NLRB*, 514 F.3d 27, 31 (D.C. Cir. 2008), *quoting Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 446 (D.C. Cir. 2004).

## B.    The NLRB Applied the Wrong Legal Standards and Improperly Departed from Established Precedent.

The basic law regarding a company's dress code requirements at work is well-established and provides a straightforward framework for this Court's analysis.  Barring any sort of discriminatory enforcement, the law permits employers to enact uniform or dress code requirements for their employees; proof of "special circumstances" is not required where the employer does not discriminate in enforcing its policy.  *See Burger King Corp v. NLRB*, 725 F.2d 1053 (6th Cir. 1984) (no violation of the Act where employer consistently enforced a policy requiring the wearing of uniforms only with authorized name tags).

11

The Board itself has specifically allowed employers to require employees to wear uniforms with company-approved logos, without having to show special circumstances, so long as the rules are not discriminatory. *Sears Roebuck & Co.*, 300 NLRB 804, 807 (1990); *Meijer, Inc.*, 318 NLRB 50, 56 (1995), *aff'd*, 130 F.3d 1209 (6th Cir. 1997), *reh'g denied*, 1998 U.S. App. LEXIS 4951 (6th Cir. March 4, 1998); *Produce Warehouse of Coram, Inc.*, 329 NLRB 915, 918 (1999) (an employer may lawfully prohibit the wearing of union insignia so long as the policy is not enforced in a discriminatory manner); *see also Stabilus, Inc.*, 355 NLRB No. 161 at 8 ("Aside from cases of unlawfully promulgated or disparately enforced policies, the employer's right to institute the policy is undisputed.") (Member Schaumber, dissenting).  For example, in one closely analogous decision, the Board found lawful an employer's hat policy that provided that employees could only wear hats issued or approved by the company. *Meijer*, 318 NLRB 50.  The ALJ in that case found, and the NLRB affirmed, that "the hat policy became part of the uniform and maintained Respondent's desired uniformity" and wearing union hats "stands on different footing" from the wearing of union pins on uniforms. *Id.* at 57. *See also Noah's New York Bagels*, 324 NLRB 266, 275 (1997) (finding that an employer lawfully enforced its policy requiring employees to wear a company t-shirt and directing an employee to remove a company shirt with an added phrase).

12

The NLRB opinion here is contrary to this basic law.   The Board summarized its holding in footnote 3 on the first page of its opinion, as follows:

> For the reasons stated by the judge, we affirm his finding that the Respondent's policy that prohibits employees from wearing any baseball caps other than company caps is overbroad and in violation of Sec. 8(a)(1).  It is undisputed that the policy on its face prohibits employees from engaging in the protected activity of wearing caps bearing union insignia. We affirm the judge's finding that this prohibition was not part of the Respondent's company uniform policy and that the asserted special circumstances for the prohibition lack merit.  Moreover, we note that the result would be the same even if we accepted the Respondent's argument that the cap policy is part of the company uniform policy.  "An employer cannot avoid the 'special circumstances' test simply by requiring its employees to wear uniforms or other designated clothing, thereby precluding the wearing of clothing bearing union insignia."  *Stabilus, Inc.* 355 NLRB No. 161, slip op. at 3 (2010) [additional citations omitted].

To address this holding World Color separates it into its three parts:  (1) the Board's conclusion that World Color's policy that employees may only wear baseball caps with the Quad logo is overbroad and in violation of Sec. 8(a)(1) because it prohibits employees from wearing baseball hats "bearing union insignia," which the Board found is a protected activity; (2) the Board's conclusion that the baseball hat requirement is not part of the company uniform policy and there are no justifiable "special circumstances" for the restriction on wearing union baseball hats; and (3) World Color cannot avoid the "special circumstances" test by requiring its employees to wear clothing that necessarily precludes wearing union clothing.  Reviewing these findings *de novo*, as it must, the Court should set

the Order aside because the Board failed to apply the proper legal standards and departed from established precedent without reasoned justification.

### 1.  The Board Erred In Concluding That The Hat Policy Is Overbroad.

The NLRB erred in holding World Color's policy is overbroad because it prohibits the employees from wearing baseball caps "bearing union insignia" for the simple reason that World Color's policy does not do so.  The policy only requires that if employees choose to wear a hat to secure their hair it must be a baseball cap bearing the Quad/Graphics logo.  (Joint Ex. 2 at 17) ("Baseball caps are prohibited except for Quad/Graphics baseball caps with the bill facing forward.")  True, the policy prevents employees from replacing the company hat with a hat of their own choosing, such as a New York Yankees hat or a Nike hat or a "Life Is Good" hat.  Or a union hat.  But nothing in the policy prevents an employee from attaching a union pin, button, or other removable union identification – all union insignia – to his or her Company hat.  Nothing in the policy prevents employees from wearing union insignia elsewhere on their body such as a belt buckle or safety glasses.  Indeed, the Government produced no evidence at the hearing that any employee has ever been prohibited from wearing any type of union insignia.  (*See* Order at 1) (the Board did not address whether the policy is discriminatory or unlawfully enforced as neither was alleged in the complaint). In fact, the only evidence introduced at the Board hearing on the

14

enforcement of the policy came from the Government's own witness, who confirmed that the policy is non-discriminatory.  He testified that he was required to remove a hat with a sports team's logo on it while working on the production floor.  (RT 100:18-102:1.)

Further, employees are not required to wear a baseball cap at all.  If their hair is longer than the specified length, they may instead choose to secure their hair to their heads using any one of a number of objects, such as a headband, hair tie, or ribbon, which may be any color and display any logo an employee chooses, including a union logo.  (Joint Ex. 2 at 17.)

In the absence of a prohibition on union insignia, to find a work rule regarding employee dress unlawfully overbroad the Board must show one of the following: (1) the rule has been applied to restrict the exercise of Section 7 activity; (2) employees would reasonably construe the language to prohibit Section 7 activity; or (3) the rule was promulgated in response to Section 7 activity. *Martin Luther Memorial Home, Inc.*, 343 NLRB 646, 647 (2004).  None of these requirements is present here.

First, no evidence was presented at the hearing that the hat policy has ever been applied to restrict Section 7 activity.  The Government did not plead or prove that employees have been prohibited from adorning the hat (or any other parts of their person or uniform) with union insignia.  (*See* Order at 1, fn. 3) (complaint did

15

not allege that policy is discriminatory or was unlawfully enforced).  In addition, the Government can point to no evidence it introduced of actual interference, coercion, or restraint in employees' exercise of their Section 7 rights.  Indeed, the Government introduced no evidence that any employee attempted or even desired to wear union logos or insignia in the workplace and was denied that opportunity. The Board inappropriately read into World Color's hat policy restrictions that exist neither on the policy's face nor as it has been applied, and its conclusions are without precedent.

Second, employees would not reasonably interpret the hat policy as restricting Section 7 activity.  As stated above, while the hat policy requires any hat to have the company logo on it, the policy does not prevent employees from wearing union insignia.  (*See* Joint Ex. 2 at 12-13, 17.)  Again, the record contains no evidence that any employees have been prohibited from wearing union insignia or have felt constrained by the policy in the exercise of their Section 7 rights.

Third, the record contains no evidence that the hat policy was enacted in response to employees' lawful Section 7 activity.  Instead, World Color produced undisputed evidence demonstrating that the hat policy was implemented for legitimate business reasons—namely, to provide employees with an option for safely securing their hair to their heads in a way that is neither tied to gang affiliation nor interferes with the employees' appearance from a presentation

16

standpoint.  (RT 204:10-205:25, 206:5-207:14, 211:21-212:2.)  The Government

presented no evidence and neither the ALJ nor the Board issued a finding that in

any way suggested that the hat policy was targeted at union activity, rather than

based on these legitimate business concerns.  In fact, the Government itself

introduced evidence that employees who work in production areas of printing

facilities choose to wear hats because "the worst thing to get in your hair is paper,

dust and grease."  (RT 63:18-23.)

Despite the clear import of this legal test for whether a rule is overbroad, the

Board did not consider it in issuing its decision.  As set forth above, none of the

three *Martin Luther* factors is present in this case, and the hat policy is not

unlawfully overbroad.  Because the hat policy is merely a neutral, non-

discriminatory dress code policy like those previously approved by the Board and

is not overbroad under *Martin Luther*, the Board's holding that the policy violates

the Act must be reversed.

> **2.    Contrary To The NLRB Holding, World Color's Hat Policy Is A Lawful Dress Code And No Special Circumstances Are Necessary For Its Enforcement.**
>
> > **a.    The Hat Policy Is A Lawful Dress Code.**

Contrary to the Board's finding, World Color's hat policy is a lawful dress

code.  Like other general dress code policies, World Color restricts the hat that

17

may be worn but not other union insignia in the form of accessories that demonstrate union support.  (*See* Joint Ex. 2.)

> All hair hanging past the bottom of the collar must be secured to the head while in the production areas.  If hair does not hang past the collar but could potentially get caught in our equipment, it must be secured to the head with a hairnet or by other means.  Baseball caps are prohibited except for Quad/Graphics baseball caps with the bill facing forward.  Ponytails are strictly prohibited.  Facial hair longer than the base of the neck must be secured.

(*Id*. at 17.)   The Quad/Graphics hat is merely an article of clothing which employees may opt to wear along with their uniforms, should they wish to do so, in order to secure their hair for safety reasons.  (*See* Joint Exs. 4 and 5.)

Moreover, the hat policy is unquestionably a part of the lawful uniform policy, and therefore lawful itself.  The Board erred in adopting the ALJ's conclusion that World Color's "uniform and hat policies are two separate distinct policies." (Order at 1, n.3; 8.)  When assessing the lawfulness of work rules, the Board must "give the rule a reasonable reading . . . it must refrain from reading particular phrases in isolation, and it must not presume improper interference with employee rights."  *Martin Luther Memorial Home, Inc.*, 343 NLRB at 646.  The Board's reading of World Color's work rules is unreasonable.

This Court has acknowledged the importance of reading a work policy in the context of a company's work policies as a whole in order to interpret whether the rule violates the NLRA.  *See Aroostook County Regional Ophthalmology v. NLRB*,

81 F.3d 209 (D.C. Cir. 1996) (Court overturned the NLRB's conclusion that the employer maintained overbroad work policies in violation of the Act). In *Aroostook County*, two work rules were at issue, the first of which was on page 4 and the second on page 21 of an office manual. The first rule stated "no office business is a matter for discussion with spouses, families or friends." *Id*. at 211. The second rule stated "all grievances are to be discussed in private with the office manager or physicians. It is totally unacceptable for an employee to discuss grievances within earshot of patients." *Id*. The Court reversed the Board's decision that both rules violated the Act, concluding that when read in context (as part of a longer provision on patient confidentiality), the first rule was intended to prevent employees from discussing patient medical information and could not be reasonably read to preclude employees from exercising their Section 7 rights. *Id*. at 213-14. With regard to the second rule, the Court concluded, when considered in context, employees would understand that the rule was limited to prohibit discussions about their grievances in front of patients. *Id*.

Cautioning the NLRB to abstain from reading rules out of context, the Court held:

> Once again, the Board has imagined horrible hypothetical situations (which if true, might violate the Act) that have nothing much to do with the rule as written and enforced by the Company. Even worse, in assessing [the Company's] rules, the Board has failed to properly take account of the employment context in which this case arises.

*Id.* at 213.  The Court held that the Board's refusal to read the challenged policy in the context of another policy in the office manual was unjustified, and reversed the Board's finding to the contrary.  *Id.* at 213-14.[4]

Here, like in *Aroostook County*, the Board failed to provide reasonable context to World Color's rules and improperly concluded that the hat policy is not part of the uniform policy (the latter of which was not challenged by the Government).  (RT 38:10-16, 103:25-104:14.)  The basis for the Board's conclusion was that (1) the hat policy is in the safety section of the Employee Guidelines, while the "dress code" is in a separate section five pages later; and (2) the hat policy was formulated by the Safety, Security and Human Resources departments.[5]  (Order at 8.)  However, the Board completely disregarded the record

---

[4] *See also Meijer*, 318 NLRB 50 (finding that an employer's hat policy was part of its uniform policy even though it was disseminated to employees in a memo rather than included in the employee handbook with the uniform policy).

[5] With regard to this latter basis, the ALJ provided no explanation as to why which departments were involved in formulating the policy would in any way affect whether the hat policy is part of the larger uniform policy.  Moreover, given the type of work performed at the Fernley facility, it is perfectly logical that all three departments would be involved in developing any type of uniform policy.  For example, the Safety department must make certain that any uniform policy adequately ensures that employees do not wear loose clothing on the production floor to avoid the risk of having their clothes caught in the presses.  The Security department must confirm that the colors and type of clothing chosen for the uniforms do not present a security risk, such as a gang affiliation, to the Company.  Last, the Human Resources department would have make sure that the uniforms appropriately present the employees as representatives of the Company.  The ALJ's conclusion that because all three departments developed the hat policy it

20

evidence establishing World Color's legitimate, undisputed reasons for the location of the nationwide hat policy in the Employee Guidelines, as well as binding precedent which required the Board to consider World Color's policies as a whole and to consider the context in which rules are created, understood, distributed and enforced.

First, the general uniform policy states that "certain positions may have additional or different uniform requirements" and makes clear that position-specific uniform requirements may be, and are, addressed in other sections of the Employee Guidelines.  (Joint Ex. 2 at 13.)  The hat policy, which applies to the production floor employees, is one such requirement.  (RT 207:7-20.)  The record evidences that the hat policy was included in the safety section of the Employee Guidelines because safety is a priority for the Company and hats are one of several ways employees can secure their hair to their heads as a safety measure.  (*See* RT 220:17-20).  Thus, it makes more sense, in context, for the hat policy to be in the safety section of the Guidelines rather than in the general uniform section.

Second, the evidence presented at the hearing established that the hat policy was intended to be, and is regarded as, part of the uniform policy.  For example, (1) like other optional parts of the uniform, the hats can be purchased on the company website and, if worn, must bear the Quad/Graphics logo; (2) the policy

must therefore be separate from the uniform policy is simply without any logical basis or justification.

memorandum sent to Fernley employees specifically stated that the hats are part of the uniform; and (3) the Government's own employee witnesses confirmed they believed the hat was an optional part of the uniform policy. (Joint Exs. 2, 3 and 5; RT 63:18-15.)  In addition, at the Board hearing, Counsel for the General Counsel *stipulated* that the hat policy was intended to be part of the uniform policy.  (RT 236:4-10; 237:6-238:13.)   The Board ignored this evidence and stipulation in issuing its Order.

In finding the hat policy separate from the uniform policy, the Board improperly read the hat policy out of context and without regard to the "reality of workplace" analysis in which it was required to engage under *Aroostook County*. Under *de novo* review, the NLRB's conclusion that World Color's hat policy is not part of its uniform policy should be reversed.

### b.    No Showing Of Special Circumstances Is Necessary.

The Board also erred in holding that World Color had to demonstrate special circumstances to enforce its hat policy.  The special circumstances showing only comes into play where an employer's non-discriminatory dress code prohibits employees from displaying union insignia at work; then, the employer must establish special circumstances justifying the prohibition.  *See Republic Aviation v. NLRB*, 324 U.S. 793, 801-803 (1945).  To repeat, the special circumstances analysis is required *only* if a uniform policy bans the wearing of union insignia.

*Sears Roebuck & Co.*, 300 NLRB at 807; *Great Plains Coca-Cola Bottling Co*.,
311 NLRB 509, 515 (1993); *Meijer, Inc*., 318 NLRB at 56; *Republic Aviation*, 324
U.S. at 801-803.

Here, as discussed above, World Color's uniform policy contains no such
ban. The hat policy does not prohibit employees from displaying union insignia,
but simply states that "baseball caps are prohibited except for Quad/Graphics
baseball caps." (Joint Ex. 2 at 17.) Although employees are prohibited from
replacing the Company hat with a hat of their own choosing, including a union hat,
nothing in the policy prevents an employee from attaching a union pin, button or
other removable insignia to their hat. Indeed, the Government introduced no
evidence at the hearing that any employee has ever been prohibited from doing so.
Even the wearing of a hat is not mandatory, and the other options also may include
or bear union insignia. Employees may choose to secure their hair to their heads
using any one of a number of objects, such as a headband, hair tie, or ribbon,
which may be any color and display a logo of the employee's choosing—including
a union logo. (*See* Joint Ex. 2.) Where an employer "adequately maintains the
opportunity to display prounion sentiment" by allowing employees to wear union
insignia, but places reasonable restrictions on the amount or type of insignia that
may be worn, the employer has not violated the Act. *NLRB v. Starbucks Corp.*,
679 F.3d 70, 78 (2d Cir. 2012) (finding that because employer allowed employees

to wear one pro-union button, its prohibition on multiple buttons was not unlawful); *see also Produce Warehouse*, 329 NLRB at 918 (1999) (employer may place reasonable restrictions on size and type of insignia that may be worn at work, including on hats worn by employees).

The Board's Order must be reversed because, contrary to the law, it improperly requires that World Color establish special circumstances for its hat policy *even in the absence* of any prohibition on union insignia. *See Republic Aviation*, 324 U.S. at 801-803; *Sears Roebuck & Co.*, 300 NLRB at 807; *Coca-Cola Bottling Co*., 311 NLRB at 515; *Meijer, Inc.*, 318 NLRB at 56 (1995).

### 3.   The Board Erred In Concluding That The Hat Policy Precludes Employees From Wearing Union Insignia.

The Board erroneously concluded that, even if the hat policy is part of World Color's uniform policy, the policy is still overbroad. The Board reasoned that an employer cannot use its uniform policy to preclude employees from wearing clothes bearing union insignia altogether and, by that means, avoid the "special circumstances" test.  (Order at 1, fn. 3.)  But neither World Color's specific hat policy nor its more general uniform policy prohibit the wearing of union insignia, and the special circumstances analysis therefore does not apply.

The general uniform policy in the Employee Guidelines, in pertinent part, provides that employees must wear Quad/Blues, including navy blue pants, shorts or skirt and a navy blue shirt with the Quad logo and the employee's name, and

24

also have the option of wearing a number of other items bearing the Quad logo, including a Quad hat. (*See* Joint Ex. 2 at 12-13; Joint Ex. 4-5.) The policy also specifically states that "employees are required to dress and groom professionally at all times. While accessorizing the uniform in good taste and in accordance with safety rules is acceptable, your name (first and last) and the Quad/Graphics logo must show at all times." (Joint Ex. 2 at 12) (emphasis added). In the proceedings below, the Government conceded that this uniform policy is lawful, "not in dispute" and that it does "*not have a problem with an employer asking [its] employees to wear a uniform* that depicts a logo of the Company." (RT 37:18-38:1, 103:25-104:1, 105:18-106:2, 133:21-22) (emphasis added).

The Board has applied the special circumstances analysis in cases where either an employer had no uniform policy in place but prohibited employees from wearing union insignia, *or* an employer who did have a uniform policy prohibited employees from adding union insignia, such as a pin, to the uniform. *Boise Cascade Corp.*, 300 NLRB 80, 84-85 (1990); *North Hills Office Servs.*, 346 NLRB 1099 (2006); *Burger King Corp.*, 725 F.2d 1053; *Sears Roebuck & Co.*, 300 NLRB at 807; *Coca-Cola Bottling Co.*, 311 NLRB at 515; *Meijer, Inc.*, 318 NLRB at 56; *Republic Aviation*, 324 U.S. at 801-803. Neither of these circumstances is present here, as World Color has a non-discriminatory uniform policy in place that does not prohibit employees from wearing union insignia. To the contrary, the policy

25

specifically contemplates that employees will "accessorize" their uniforms, and places no restriction on the use of union insignia to do so.  (Joint Ex. 2 at 12.)

In light of this, the Board could only give a tortured explanation of how the hat policy is still so overbroad as to require a showing of special circumstances. Specifically, the Board stated "it is undisputed that the [hat] policy on its face prohibits employees from engaging in the protected activity of wearing caps bearing union insignia."  But no protected right to wear a union hat in the workplace has ever been established as a matter of law, so the policy is not so overbroad as to infringe on a protected right.  Because World Color's uniform policy, including its hat policy, does not prohibit the wearing of union insignia, the Board's application of the special circumstances analysis was erroneous based on its own established precedent, and its Order cannot stand.

## C.     Public Policy Dictates That The Board's Order Must Be Set Aside.

Adding to the Board's disregard for its own precedent and the evidence introduced at the hearing, public policy dictates that the Order must be set aside. Decades of precedent emphasize that the Board's role is not to make employment policies that it may subjectively prefer.  Rather, it is well settled that "management is for management.  Neither the Board nor the Court can second guess it or give it gentle guidance by over-the-shoulder supervision."  *See NLRB v. Columbus Marble Works*, 111 NLRB 1162 (1955), *enf'd by*, 233 F.2d 406, 413 (5th Cir.

1956).  The role of the Board is not to substitute its business judgment for that of the employer in the absence of unlawful conduct.  *Liberty Homes, Inc.*, 257 NLRB 1411, 1412 (1981).

Here, by ordering that World Color rescind its hat policy (Order at 2), the Board has improperly usurped World Color's right to maintain non-discriminatory policies as its business requires.  This language suggests that World Color must either allow employees to wear any hat they would like, manufactured with any logo that they would like, or establish "special circumstances" at each of its facilities around the country that justify the policy.  This Order, if enforced, improperly usurps World Color's legitimate exercise of its lawful business judgment in violation of *Columbus Marble Works* and *Liberty Homes*.

Moreover, the Board's Order provides virtually no guidance to World Color (or to other employers) as to what sort of policy is lawful under the Act.  The Order merely states that World Color must rescind its hat policy and either advise its employees that the policy has been withdrawn or "provide the language of a lawful policy."  (Order at 2.)  What that language should be, however, is not specified, and the Board's decision provides no hints.  World Color has been given no direction, for example, if the Board's Order means that: (1) employees have a statutory right under the Act to wear any hat they choose whenever they are at work; (2) World Color may prohibit all hats; (3) World Color may prohibit all hats

27

*except* union hats; or (4) that the policy is saved by simply revising it to state that nothing in the policy shall be construed to prevent the exercise of employees' Section 7 rights under the NLRA.  These are all questions left unanswered by the Order.  The Board's Order finding World Color's hat policy overbroad is itself overbroad.  For these additional reasons, the Board's Order cannot stand.

## CONCLUSION

Petitioner World Color respectfully requests that the Court decline to enforce the Board's Order, as the Board failed to apply existing precedent to the facts of this case in a rational manner consistent with the Act.  The Board's holding that World Color's hat policy is overbroad contradicts established precedent that an employer may enact a non-discriminatory uniform policy without having to establish the existence of special circumstances.  In addition, the Board's Order is inconsistent with public policy, as it ignores the balance that must be struck between an employer's right to govern its employees and the employees' right to express union support.  For these reasons, the Board's Order must be set aside.

Dated:  June 2, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ Ronald J. Holland
        SHEPPARD, MULLIN, RICHTER &
        HAMPTON LLP
          A Limited Liability Partnership
          Including Professional Corporations
        RONALD J. HOLLAND, Bar No. 55268
        ELLEN M. BRONCHETTI, Bar No. 55264
        4 Embarcadero Center, 17th Floor
        San Francisco, CA 94111
        Telephone: (415) 434-9100
        Facsimile: (415) 434-3947

        Attorneys for Petitioner WORLD COLOR
        (USA) CORP., a wholly owned subsidiary of
        QUAD/GRAPHICS, INC.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*7,026*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>June 2, 2014</u>           <u>/s/ Ronald J. Holland</u>
                                            *Counsel for Petitioner/Cross–Respondent*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of June, 2014, I caused this Page Proof Brief of Petitioner/Cross–Respondent to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Linda Dreeben
Jill A. Griffin
David Allen Seid
NATIONAL LABOR RELATIONS BOARD
   (NLRB) Appellate and Supreme Court Litigation Branch
1099 14th Street, NW
Washington, DC 20570
(202) 273-2960

*Counsel for Respondent/Cross–Petitioner*

/s/ Ronald J. Holland
*Counsel for Petitioner/Cross–Respondent*