## Nos. 14-1028, 14-1037

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**WORLD COLOR (USA) CORP., A WHOLLY OWNED
SUBSIDIARY OF QUAD GRAPHICS, INC.**

**Petitioner/Cross-Respondent**

**v.**

**NATIONAL LABOR RELATIONS BOARD**

**Respondent/Cross-Petitioner**
_____

**ON PETITION FOR REVIEW AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD**
_____

**BRIEF FOR
THE NATIONAL LABOR RELATIONS BOARD**
_____

**JILL A. GRIFFIN**
*Supervisory Attorney*

**DAVID A. SEID**
*Attorney*

*National Labor Relations Board*
**1099 14th Street, N.W.
Washington, D.C. 20570
(202) 273-2949
(202) 273-2941**

**RICHARD F. GRIFFIN, JR.**
         *General Counsel*
**JENNIFER ABUZZO**
          *Deputy General Counsel*
**JOHN H. FERGUSON**
          *Associate General Counsel*
**LINDA DREEBEN**
         *Deputy Associate General Counsel*
*National Labor Relations Board*

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| WORLD COLOR (USA) CORP., A WHOLLY OWNED SUBSIDIARY OF QUAD GRAPHICS, INC. | ) ) ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | Nos. 14-1028, 14-1037 |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | Board Case No. |
| Respondent/Cross-Petitioner | ) | 32-CA-62242 |

_____

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Rule 28(a)(1) of the Rules of this Court, counsel for the National

Labor Relations Board certify the following:

*A. Parties and Amici*:  World Color (USA) Corp., a wholly owned

Subsidiary of Quad Graphics, Inc., was the Respondent before the National Labor

Relations Board and is the Petitioner/Cross-Respondent before the Court.  The

Board is the Respondent/Cross-Petitioner before the Court.  The Board's General

Counsel was a party before the Board.  The Graphic Communications Conference

of the International Brotherhood of Teamsters, Local 715-C was the charging party

before the Board.  There were no intervenors or amici before the Board, and there

are none in this Court.

*B. Rulings Under Review*:  The case under review is a decision and order of

the Board issued on February 12, 2014, and reported at 360 NLRB No. 37.

*C.* **Related Cases**:  This case has not previously been before this Court. The Board is not aware of any related cases pending or about to be presented to this Court or any other court.

/s/Linda Dreeben
Linda Dreeben
Deputy Associate General Counsel
National Labor Relations Board
1099 14th Street, NW
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 11th day of July 2014

# TABLE OF CONTENTS

**Headings**                                                            **Page(s)**

Statement of jurisdiction .......................................................................1

Statement of the issue presented ...........................................................2

Relevant statutory and regulatory provisions .......................................3

Statement of case ...................................................................................3

Statement of facts...................................................................................4

I.  The Board's findings of fact ...............................................................4

     A. Background; the Company acquires the Fernley, Nevada facility in July 2010 and maintains the policy that does not require the union-represented production employees to wear uniforms or prohibit them from wearing baseball caps of their choosing...............................................4

     B. In early 2011, the Union is decertified; the Company implements a uniform policy and baseball-cap policy at the Fernley facility that prohibits all baseball caps except for those purchased from the Company that display the Company's logo................................................5

II.  The Board's conclusions and order...................................................8

Summary of argument............................................................................9

Standard of review ...............................................................................10

Argument...............................................................................................12

     Substantial evidence supports the Board's findings that the Company violated Section 8(a)(a) of the Act by maintaining effect at its Fernley facility an overbroad policy that prohibits employees from wearing baseball caps bearing union insignia ................................................12

     A.  Applicable principles .............................................................12

# TABLE OF CONTENTS

**Headings – Cont'd**                                                    **Page(s)**

B.  The Board reasonably found that the Company unlawfully maintained a
policy at its Fernley Facility that prohibits employees from wearing
baseball caps bearing union insignia..........................................................13

C.   The Company's contentions are without merit ........................................18

Conclusion .........................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Albertsons, Inc.*,
  351 NLRB 254 (2007) ........................................................................... 14,17,26

*Aroostook County Regional Ophthalmology*,
  Ctr., 81 F.3d 209 (D.C. Cir. 1996)...................................................................25

*Bell-Atlantic-Penn., Inc.*,
  339 NLRB 1084 (2003), *enforced*
  99 Fed. Appx. 233 (D.C. Cir. 2004) ...................................................................13

*Burger King Corp.*,
  725 F.2d 1053 (6th Cir. 1984) .......................................................................21

*Cintas Corp. v. NLRB*,
  482 F.3d 463 (D.C. Cir. 2007)........................................................................19

*Consolidated Edison Co. v. NLRB*,
  305 U.S. 197 (1938)....................................................................................10

*Coronet Foods, Inc. v. NLRB*,
  981 F.2d 1284 (D.C. Cir. 1993).......................................................................27

*Federated Logistics & Operations v. NLRB*,
  400 F.3d 920 (D.C. Cir. 2005)..................................................................... 10,11

*Fibreboard Paper Prods. Corp. v. NLRB*,
  379 U.S. 203 (1964)....................................................................................11

*Frazier Indus. Co. v. NLRB*,
  213 F.3d 750 (D.C. Cir. 2000).........................................................................11

*Goodyear Tire and Rubber Co.*,
  357 NLRB No. 38 (2011), 2011 WL 3346120 ...................................................13

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

iii

# TABLE OF AUTHORITIES

**Cases-Cont'd**                                                                 **Page(s)**

*Great Plains Coca-Cola Bottling Co.*,
   311 NLRB 509 (1993) ................................................................ 18,25

*\*Guard Publishing Co. v. NLRB*,
   571 F.3d 53 (D.C. Cir. 2009) .................................................. 12,13,17

*Guard Publishing Co.*,
   351 NLRB 1110 (2007), *enforced in relevant part*
   571 F.3d 53 (D.C. Cir. 2009) ...........................................................26

*\*Guardsmark, LLC v. NLRB*,
   475 F.3d 369 (D.C. Cir. 2007) ....................................... 14,18,19,22,25

*Guardsmark, LLC*,
   344 NLRB 809, *enforced in relevant part*
   475 F.3d 369 (D.C. Cir. 2007) ........................................................26

*Int'l Transp. Serv. v. NLRB*,
   449 F.3d 160 (D.C. Cir. 2006) ........................................................10

*Lutheran Heritage Village-Livonia*,
   343 NLRB 646 (2004) ....................................................................19

*Meijer, Inc.*,
   318 NLRB 50, (1995) *enforced*,
   130 F.3d 1209 (6th Cir. 1998) ................................................ 18,20,25

*NLRB v. Rockwood Energy & Mineral Corp*.,
   942 F.2d 169 (3d Cir. 1991)...........................................................27

*NLRB v. St. Francis Healthcare Centre*,
   212 F.3d 945 (6th Cir. 2000) ..........................................................21

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

**Cases-Cont'd**                                                               **Page(s)**

## TABLE OF AUTHORITIES

*NLRB v. Starbucks Corp.*,
  679 F.3d 70 (2d Cir. 2012)...............................................................20

*NLRB v. Weingarten, Inc.*,
  420 U.S. 251 (1975)........................................................................13

*Noah's New York Bagels, Inc.*,
  324 NLRB 266 (1997) .....................................................................21

*Nordstrom, Inc.*,
  264 NLRB 698 (1982) .....................................................................13

*O'Dovero v. NLRB*,
  193 F.3d 532 (D.C. Cir. 1999)........................................................11

*P.S.K. Supermarkets, Inc.*,
  349 NLRB 34 (2007) .................................................................. 15,18

*Petrochem Insulation, Inc. v. NLRB*,
  240 F.3d 26 (D.C. Cir. 2001)..........................................................11

*Produce Warehouse of Coram, Inc.*,
  329 NLRB 915 (1999) .............................................................. 12, 21

*Progressive Elec., Inc. v. NLRB*,
  453 F.3d 538 (D.C. Cir. 2006).........................................................12

*Republic Aviation Corp. v. NLRB*,
  324 U.S. 793 (1945)........................................................................12

*Sears Roebuck & Co.*,
  300 NLRB 804 (1990), *enforced*
  957 F.2d (2d Cir. 1992)...................................................................21

_____
[*] Authorities upon which we chiefly rely are marked with asterisks.

# TABLE OF AUTHORITIES

**Cases-Cont'd**                                                          **Page(s)**

*Sure-Tan, Inc. v. NLRB*,
   467 U.S. 883 (1984)..................................................................11

*Tasty Baking Co. v. NLRB*,
   254 F.3d 114 (D.C. Cir. 2001)...........................................12

*Traction Wholesale Ctr. Co. v. NLRB*,
   216 F.3d 92 (D.C. Cir. 2000).............................................10

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951)........................................................ 10,11

*Virginia Elec. & Power Co. v. NLRB,*
   319 U.S. 533 (1943)...........................................................26

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

**Statutes:**                                                            **Page(s)**

National Labor Relations Act, as amended
  (29 U.S.C. § 151 et seq.)

Section 7 (29 U.S.C. § 157) ............................................. 12,14,18,19,22
Section 8(a)(1) (29 U.S.C. § 158(a)(1))................................ 1,2,3,8,12,13,17,18,19
Section 10(a) (29 U.S.C. § 160(a)) .....................................................2
Section 10(c) (29 U.S.C. § 160(c)) ............................................. 11, 25
Section 10(e) (29 U.S.C. § 160(e)) ...............................................2,10
Section 10(f) (29 U.S.C. § 160(f)) .....................................................2

## GLOSSARY

| | |
|---|---|
| Act | The National Labor Relations Act |
| Board | The National Labor Relations Board |
| Br. | The opening brief of World Color (USA) Corp., a wholly-owned Subsidiary of Quad Graphics, Inc. |
| Company | World Color (USA) Corp., a wholly owned Subsidiary of Quad Graphics, Inc. |
| D&O | The Board's Decision and Order |
| Union | Graphic Communications Conference of the International Brotherhood of Teamsters, Local 715-C |

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

## Nos. 14-1028, 14-1037
_____

## WORLD COLOR (USA) CORP., A WHOLLY OWNED
## SUBSIDIARY OF QUAD GRAPHICS, INC.

**Petitioner/Cross-Respondent**

**v.**

## NATIONAL LABOR RELATIONS BOARD

**Respondent/Cross-Petitioner**
_____

## ON PETITION FOR REVIEW AND CROSS-APPLICATION
## FOR ENFORCEMENT OF AN ORDER OF
## THE NATIONAL LABOR RELATIONS BOARD
_____

## BRIEF FOR
## THE NATIONAL LABOR RELATIONS BOARD
_____

## STATEMENT OF JURISDICTION

This case is before the Court on the petition of World Color (USA) Corp., a

wholly owned subsidiary of Quad Graphics, Inc. ("the Company") to review, and

on the cross-application of the National Labor Relations Board ("the Board") to

enforce, an order of the Board finding that the Company violated Section 8(a)(1)

of the National Labor Relations Act ("the Act"), as amended (29 U.S.C. §§ 151, 158(a)(1)).

The Board's Decision and Order, issued on February 12, 2014, and reported at 360 NLRB No. 37 (D&O 1-10),[1] is a final order under Section 10(e) of the Act (29 U.S.C. § 160(e)). The Board had subject matter jurisdiction under Section 10(a) of the Act (29 U.S.C. § 160(a)), which empowers the Board to remedy unfair labor practices. The Company filed its petition for review on February 24, 2014. The Board filed its cross-application for enforcement on March 27, 2014. Both filings were timely, as the Act places no time limitation on such filings. This Court has jurisdiction over this proceeding pursuant to Section 10(e) and (f) of the Act (29 U.S.C. § 160(e) and (f)).

## STATEMENT OF THE ISSUE PRESENTED

Whether substantial evidence supports the Board's finding that the Company violated Section 8(a)(1) of the Act by maintaining at its Fernley facility an overbroad policy that prohibits employees from wearing baseball caps bearing union insignia.

---

[1] "D&O" refers to the Board's Decision and Order. "Tr." refers to the transcript of the unfair labor practice. "GCX" refers to the exhibits of the General Counsel; "RX" refers to the exhibits of the Company, and "JTX" refers to joint exhibits. References preceding a semicolon are to the Board's findings; those following are to the supporting evidence.

## RELEVANT STATUTORY AND REGULATORY PROVISIONS

Relevant sections of the National Labor Relations Act are reproduced in the Addendum to this brief.

## STATEMENT OF THE CASE

Acting on charges filed by the Graphic Communications Conference of the International Brotherhood of Teamsters, Local 715-C ("the Union"), the Board's General Counsel issued a complaint alleging, as relevant here, that the Company violated Section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1)) by prohibiting employees from wearing baseball caps bearing union insignia.  (GCX 1(a), (c), (e), (h).)  Following a hearing, an administrative law judge found that the Company violated the Act as alleged.  After the Company filed timely exceptions, the Board (Chairman Pearce, and Members Hirozawa and Johnson) issued its Decision and Order, affirming the judge's unfair labor practice rulings, findings, and conclusions.[2]

---

[2]  The Board also found, in disagreement with the judge, that statements by a shift supervisor to an employee regarding his transfer did not violate Section 8(a)(1) of the Act.  (D&O 1-2, 5-6.)  That finding is not at issue before the Court.

4

## STATEMENT OF FACTS

### I.     THE BOARD'S FINDINGS OF FACT

#### A.     Background; the Company Acquires the Fernley, Nevada, Facility in July 2010 and Maintains the Policy that Does Not Require the Union-Represented Production Employees to Wear Uniforms or Prohibit Them from Wearing Baseball Caps of Their Choosing

The Company is a Wisconsin corporation with an office and facility in Fernley, Nevada, where it prints and publishes commercial advertising inserts for newspapers.  (D&O 4; Tr. 40, 87, 140, GCX 1(e) par. 2, 1(g) par. 2.)  In July 2010, the Company acquired the Fernley facility from World Color.  (D&O 7; Tr. 41, 88-89.)  The Company continued to recognize the Union, which had represented World Color's production employees since approximately 2007.  (Tr. 49-50, 117-18.)

Acting Vice-President of Human Resources, Nancy Ott, who is based at the Company's Sussex, Wisconsin, headquarters, is responsible for employee and company policies at all of its facilities.  (Tr. 201-02.)  After the Company acquired the Fernley facility, it continued the same optional dress policy that had been in place since approximately 2007, when the Union became the bargaining representative of the facility's production employees.  Specifically, uniforms were optional; employees could wear a uniform shirt with the Company logo and pants. No hat policy existed, but employees could wear baseball caps that did not contain offensive language.  (D&O 7-8; Tr. 49, 60-64, 95-96, 117-18.)

**B.     In Early 2011, the Union is Decertified; the Company
Implements a Uniform Policy and a Baseball-Cap Policy at the
Fernley Facility that Prohibits all Baseball Caps Except
for those Purchased from the Company that Display the
Company's Logo**

In November 2010, after the Company had acquired the Fernley facility, the

production unit employees voted to decertify the Union.  (Tr. 117-18.)  In February

2011, the Board certified the decertification vote.  (D&O 7; Tr. 23, 50.)  A week

later, the Company distributed a memo from the facility's manager to all facility

employees entitled "Uniforms."  (D&O 7; Tr. 23, 50, 208-09, JTX 4.)  The memo

stated that over the following few weeks the Company was "rolling out [its] new

Uniform Policy and three new Safety Polices."  (JTX 4) (emphasis in the

original)).  The memo further stated that the Company would require all production

and administrative employees to wear a uniform, with the uniform for production

employees "consist[ing] of navy blue pants or shorts and a navy blue shirt," that

contained the Company's logo and the employee's name.  (D&O 7; JTX 4.)

Regarding safety, the memo stated that all employees on the production floor must

wear "Personal Protective Equipment" ("PPE") including safety shoes, safety

glasses, and hearing protection.  (JTX 4.)

Around the same time that the Company distributed the February 8 memo, it

also distributed a memo entitled "Employee Q&A about Uniforms and PPE."

(JTX 5.)  The memo informed production employees that the Company would

provide them with a free uniform through its vendor, and also noted that they had

"the option of purchasing shirts or jackets." (JTX 5.) The memo also informed

production employees how to acquire the required PPE items, and set forth "other

safety precautions" that they should follow on the production floor, including:

- "Loose, ragged or torn clothing may not be worn on the production floor. This includes hooded clothing. Shirts must be tucked in or have elastic around the bottom that can be tucked under to fit tight around the body."

- "Jewerly-e.g. rings bracelets, chains, watches, necklaces and earrings other than studs (including exposed body piercings)-may not be worn while engaged in production activities."

- "All hair hanging past the bottom of the collar must be secured to the head while engaged in production actives. If hair does not hang past the collar but could potentially get caught in [company] equipment, it must be secured to the head with a hairnet or by other means. Baseball caps are prohibited except for [company] baseball caps worn with the bill facing forward. Ponytails are strictly prohibited."

- "Facial hair longer than the base of the neck must be secured."

(JTX 5.)

In conjunction with distributing the memos, the Company held a series of

meetings during which it informed employees that baseball caps were optional, but

that if employees chose to wear caps they had to wear company caps purchased

from the Company's intranet site. The intranet site offered six styles of baseball

caps, and two hats, all of which displayed the Company's logo. (D&O 7; Tr. 17,

65-66, 90, 97-98, 107, 119-21, JTX 3.)

The newly instituted policies are contained in the Company's January 2011, "Employee Guidelines for U.S. Employees" ("Guidelines").  (JTX 2.)   Section 2 of the Guidelines set out "[Company] Expectations" regarding numerous personnel and work rules, including the code of business conduct, the progressive discipline and counseling policy, use of the Company's information systems, and its uniform policy.  (JTX 2 pp. 3, 10-15.)  The uniform policy states that employees "are required to wear the authorized [company] uniform as a condition of employment." (JTX 2 p. 12.)  The policy states that the uniform for production employees consists of navy blue pants or shorts and a navy blue shirt.  (JTX 2 p. 12.)

The baseball-cap policy is contained in Section 3 of the Guidelines entitled "Protecting Our Employees and our Facilities," which includes policies on injury prevention programs, emergency procedures, security, and the corporate safety program.  (D&O 6; JTX 2 pp. 4, 16-23.)  The "Corporate Safety Program" consists of twenty-five safety polices, including the requirement that "baseball caps are prohibited except for [company] baseball caps with the bill facing forward." (D&O 6; JTX 2 p. 17.)

## II.  THE BOARD'S CONCLUSIONS AND ORDER

Based on the foregoing facts, the Board (Chairman Pearce and Members Hirozawa and Johnson) found, in agreement with the administrative law judge, that the Company violated Section 8(a)(1) of the Act by maintaining an overbroad policy in its Guidelines that prohibits employees at its Fernley facility from wearing baseball caps bearing union insignia.  (D&O 2, 9.)

The Board's Order requires the Company to cease and desist from the unfair labor practice found and from, in any like or related manner, interfering with, restraining, or coercing employees in the exercise of their statutory rights.  (D&O 2.)  Affirmatively, the Order requires the Company to immediately rescind the unlawful baseball-cap policy.  (D&O 2.)  The Order also requires the Company to furnish all current employees at its Fernley facility with inserts to its Guidelines that inform them of the rescission of the unlawful policy, or that provide language of new lawful rules; or in the alternative, to publish and distribute to all current employees at its Fernley facility revised Guidelines that do not contain the unlawful policy or provides a new lawful policy.  (D&O 2.)  The Order requires the Company to post a remedial notice.  (D&O 3.)

## SUMMARY OF ARGUMENT

Under long-settled principles, employees have the statutory right to wear union insignia while at work. An employer who places restrictions on that right must demonstrate "special circumstances" warranting these restrictions. Here, the Board reasonably found that the Company interfered with its employees' rights by maintaining a policy at its Fernley, Nevada, facility that prohibits employees from wearing baseball caps except those with the Company logo. The Board found the policy is facially overbroad because it prohibits employees from wearing baseball caps that display union insignia. The Board rejected the special circumstances asserted by the Company as unsupported in the record. Indeed, before the Court, the Company mounts no serious defense to the Board's finding that the Company failed to establish special circumstances justifying the prohibition. Accordingly, the Board's finding that the Company maintained an overbroad baseball-cap policy is entitled to enforcement.

There is no merit to the Company's primary argument that the Board erred by requiring it to establish special circumstances to justify the overbroad baseball-cap policy. First, the Board's requirement that the Company establish special circumstances is fully consistent with precedent, including several of the cases cited by the Company. Second, the Company mistakenly alleges that the cap policy was part of a lawful uniform policy. Additionally, the Board found the cap policy was separate from the uniform policy. Moreover, the Board found that,

even assuming that the cap policy was part of its uniform policy, the Company

cannot escape the special circumstances test and the necessary proof required to

meet that test.  Quite simply, it failed to provide proof of special circumstances

justifying its prohibition.

Finally, contrary to the Company's contention, the Board acted well within

its broad remedial discretion by requiring the Company to rescind the overbroad

baseball-cap policy.  The Board's remedy is fully consistent with its statutory

authority and existing case law.

## STANDARD OF REVIEW

The Board's legal determinations under the Act are entitled to deference,

and this Court will uphold them so long as they are neither arbitrary nor contrary to

law.  *Int'l Transp. Serv. v. NLRB*, 449 F.3d 160, 163 (D.C. Cir. 2006).  The

Board's findings of fact are "conclusive" if supported by substantial evidence on

the record as a whole.  29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340

U.S. 474, 477, 488 (1951); *Int'l Transp.*, 449 F.3d at 163.  Substantial evidence

encompasses "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938); a*ccord Federated Logistics & Operations v. NLRB*, 400 F.3d 920,

923 (D.C. Cir. 2005).  Therefore, the Court's review of the Board's unfair labor

practice findings "is quite narrow."  *Traction Wholesale Ctr. Co. v. NLRB*, 216

F.3d 92, 99 (D.C. Cir. 2000).  A reviewing court may not "displace the Board's

11

choice between two fairly conflicting views, even though the Court would

justifiably have made a different choice had the matter been before it *de novo*."

*Universal Camera*, 340 U.S. at 488; a*ccord Federated Logistics*, 400 F.3d at 923.

With regard to the Board's choice of remedies, Section 10(c) of the Act (29

U.S.C. § 160(c)) authorizes the Board to fashion appropriate orders to prevent and

remedy the effects of unfair labor practices. *See Sure-Tan, Inc. v. NLRB*, 467 U.S.

883, 898-99 (1984). The Board's remedial power under Section 10(c) is "a broad,

discretionary one, subject to limited judicial review." *Fibreboard Paper Prods.*

*Corp. v. NLRB*, 379 U.S. 203, 216 (1964); *accord Petrochem Insulation, Inc. v.*

*NLRB*, 240 F.3d 26, 34 (D.C. Cir. 2001). The Court's review is limited to

determining whether the Board has abused its discretion in ordering its chosen

remedial provision. *See Frazier Indus. Co. v. NLRB*, 213 F.3d 750, 759-60 (D.C.

Cir. 2000); *O'Dovero v. NLRB*, 193 F.3d 532, 535 (D.C. Cir. 1999).

12

**ARGUMENT**

**SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE COMPANY VIOLATED SECTION 8(a)(1) OF THE ACT BY MAINTAINING AT ITS FERNLEY FACILITY AN OVERBROAD POLICY THAT PROHIBITS EMPLOYEES FROM WEARING BASEBALL CAPS BEARING UNION INSIGNIA**

**A.     Applicable Principles**

Section 7 of the Act (29 U.S.C. § 157) guarantees the right of employees "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."  Section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1)) implements that right by providing that an employer violates the Act when an employer's conduct "'has a reasonable tendency to coerce or to interfere with'" an employee's Section 7 rights.  *Progressive Elec., Inc. v. NLRB*, 453 F.3d 538, 544 (D.C. Cir. 2006) (quoting *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 124 (D.C. Cir. 2001)).

It is well settled that Section 8(a)(1) of the Act protects the right of employees to wear union insignia while at work.  *See Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 801-03 & n.7 (1945); *Guard Publ'g Co. v. NLRB*, 571 F.3d 53, 61 (D.C. Cir. 2009).  That right extends to union baseball caps.  *See Produce Warehouse of Coram, Inc*., 329 NLRB 915, 917-18 (1999) (right to wear hats with union insignia protected unless special circumstances proven).  Accordingly, an employer's policy that on its face prohibits the wearing of union insignia violates

Section 8(a)(1) of the Act unless the employer carries its burden "of overcoming the presumption of an unfair labor practice by demonstrating that special circumstances exist." *Guard Publ'g*, 571 F.3d at 61; *accord Goodyear Tire & Rubber Co.*, 357 NLRB No. 38, slip op. at 5-6 (2011), 2011 WL 3346120 * 9.

Special circumstances that would outweigh the employees' Section 7 rights include situations where display of union insignia might "jeopardize employee safety, damage machinery or products, exacerbate employee dissension, or unreasonably interfere with a public image that the employer has established, as part of its business plan, through appearance rules for its employees." *Bell-Atlantic-Penn., Inc*., 339 NLRB 1084, 1086 (2003), *enforced* 99 Fed. Appx. 233 (D.C. Cir. 2004). The Board examines "the entire circumstances" of a particular situation to balance "the potentially conflicting interests" of an employee's right to display the insignia and the employer's right to limit or prohibit the display. *Nordstrom, Inc.*, 264 NLRB 698, 700 (1982). When the Board balances such rights, the balance it strikes is "subject to limited judicial review." *NLRB v. Weingarten, Inc*., 420 U.S. 251, 267 (1975).

**B.    The Board Reasonably Found that the Company Unlawfully Maintained a Policy at its Fernley Facility that Prohibits Employees from Wearing Baseball Caps Bearing Union Insignia**

Substantial evidence supports the Board's finding (D&O 1, 2, 8-9) that the Company violated Section 8(a)(1) of the Act by maintaining an overbroad policy

in its Guidelines that prohibited employees from wearing baseball caps "except for [company] baseball caps."  Contrary to the Company's contention (Br. 11-14, 24-26) the Board reasonably concluded, based on well-settled principles, that the policy is unlawful because it restricts employees' Section 7 rights to wear baseball caps bearing union insignia.  The Board also reasonably found that the Company did not carry its burden of establishing "special circumstances" to justify the prohibition.

It is undisputed that in early 2011, the Company implemented a policy at the Fernley facility that prohibited employees from wearing baseball caps except those caps bearing the Company's logo and purchased from the Company intranet store. (D&O 6-7.)  Therefore, the Company's optional baseball-cap policy, which explicitly prohibited non-company baseball caps, also prohibited baseball caps with union insignia.  As the Board reasonably found (D&O 1 n.3), "the [baseball cap] policy on its face prohibits employees from engaging in the protected activity of wearing caps bearing union insignia."  *See Guardsmark, LLC v. NLRB*, 475 F.3d 369, 375 (D.C. Cir. 2007) (employer's rule that instructed employees, in part, "not [to] register complaints with any representatives of the client" "explicitly prohibits [S]ection 7 activity" because employees have the statutory right to solicit sympathy from the general public and customers regarding their terms and conditions of employment); *Albertsons, Inc.*, 351 NLRB 254, 257 (2007) (employer's rule that prohibited employees from wearing badges and pins other than name badges was

facially overbroad because it covers all union badges and pins); *P.S.K. Supermarkets, Inc.*, 349 NLRB 34, 34-35 (2007) (employer's rule that precluded employees from wearing pins other than those issued by the employer was overbroad because it interfered with employees right to wear union buttons).

The Board also reasonably found (D&O 1 n.3, 9) that the Company failed to establish any special circumstances that would justify its prohibition on employees wearing baseball caps with union insignia. Before this Court, the Company (Br. 17-24) claims that the Board need not have examined whether "special circumstances" justify its policy, but it does not claim that it met its burden of demonstrating those circumstances. Rather, the Company (Br. 16-17) simply reiterates the three alleged special circumstances advanced by Acting Vice-President of Human Resources, Nancy Ott, who was involved in drafting the baseball-cap policy (D&O 7; Tr. 204-09), but fails to challenge the Board's finding that those reasons lack merit. As shown below, the Board's findings are supported by substantial evidence.

Thus, the Board reasonably dismissed Ott's testimony that safety concerns, which required that hair be properly secured to avoid being caught in the presses, established special circumstances warranting the overbroad policy. (D&O 7, 8; Tr. 206.) As the Board explained, Ott's asserted safety justification is undermined by her acknowledgement that the Company's baseball caps contained no specific safety features, and that apart from color and placement of the Company's logo,

she was not aware of any special requirements placed on the vendor that provided

the baseball caps.  (D&O 7, 8; Tr. 217-18.)  Moreover, as the Board found (D&O

8), the Company failed to present any evidence "that permitting its employees to

wear union logo baseball type [caps] would likely jeopardize its employee's

safety."

Similarly, the Board reasonably rejected (D&O 7, 8) Ott's testimony that

company-only baseball caps were required due to security concerns about gang

insignia and symbolism.  (D&O 7; Tr. 206-07.)  As the Board explained (D&O 7,

8), this claim is undermined by Ott's acknowledgment that she was not aware of

any gang activity or gang symbolism concerns at the Fernley facility, and could not

identify any facilities where the Company had gang insignia and/or symbolism

problems.  (D&O 7, 8; Tr. 219, 227.)  Moreover, the uncontested credited

testimony of employees Phillip Decker (D&O 7, 8; Tr. 117) and William Cleland

(D&O 7, 8; Tr. 94), that they were not aware of any gang activity at the Fernley

facility, further undermines Ott's reliance on gang insignia and symbolism as

establishing a special circumstance warranting the Company's policy.

Finally, the Board reasonably found (D&O 8-9) Ott's claim, that the

Company wanted to align the baseball cap with its shirt and pant uniform for

presentation purposes, insufficient to establish special circumstances because the

production employees did not have contact with customers.  (D&O 7, 8-9; Tr.

207.)  As the Board explained "[t]he record does not establish any employee

17

interaction with customers." (D&O 8.) Specifically, former employee John

Vollene testified (D&O 7, 8; Tr. 68-70, 83-84) that he was not aware of any

customers visiting the facility after the Company acquired the facility, and that any

customers who visited the facility under prior ownership rarely entered the

production floor. Likewise, employees Decker (D&O 7, 9; Tr. 123) and Cleland

(D&O 7; Tr. 109, 111-12) both credibly testified that they never saw customers at

the facility. In these circumstances, absent any evidence that wearing a union

baseball cap would interfere with the Company's public image, the Board

reasonably concluded (D&O 9) that "the Company failed to show that baseball

caps with union insignia, worn by employees, would detract from its employee

presentation desires or objectives."

Having reasonably found that the Company failed to establish special

circumstances to justify its company-only baseball hat policy at the Fernley

facility, the Board reasonably concluded (D&O 1 n.3, 2, 8-9) that the Company

violated Section 8(a)(1) of the Act by maintaining an overbroad policy that

prohibited employees from wearing baseball caps with union insignia. *See Guard

Publ'g*, 571 F.3d at 62 (employer unlawfully maintained an overbroad rule that

prohibited employees from wearing or displaying union insignia while working

with the public where no special circumstances existed); *Albertsons, Inc.*, 351

NLRB at 257 (2007) (employer's rule that prohibited employees from wearing

badges and pins other than name badges was unlawful where no special

circumstances existed); *P.S.K. Supermarkets, Inc.*, 349 NLRB at 34-35

(employer's rule that precluded employees from wearing pins other than those

issued by the employer was unlawful where no special circumstances existed); *see*

*also Meijer, Inc*., 318 NLRB 50, 50, 56, (1995) (employer unlawfully applied its

dress code policy to prohibit employees from wearing union insignia in areas that

did not involve customer contact where there was no evidence of likely disruption

or endangerment), *enforced* 130 F.3d 1209 (6th Cir. 1998); *Great Plains Coca-*

*Cola Bottling Co*., 311 NLRB 509, 515 (1993) (employer unlawfully prohibited

union jackets where no special circumstances for requiring that only the

employer's jackets could be worn at the plant).

### C.    The Company's Contentions Are Without Merit

As an initial matter, the Company (Br. 16) misconstrues the applicable

standard by asserting that its baseball-cap policy was not overbroad because

"employees would not reasonably interpret the that policy as restricting Section 7

activity," and because (Br. 23, 26-27) there is no evidence that it was ever used to

prevent employees from wearing union insignia.  As this Court has recognized, the

Board considers such factors only when a policy does not explicitly restrict Section

7 activity.  *Guardsmark,* 475 F.3d at 374, 375.  When an employer's policy, as

here, prohibits Section 7 activity on its face, the "mere maintenance" of the policy

violates the Act regardless of enforcement, and the Board does not inquire as to how employees would construe the policy.  *Id.*[3]

In any event, the Company is in no position to repeatedly claim (Br. 14-16, 22-24, 26) that its baseball-cap policy is not overbroad because production employees could place union insignia such as pins, buttons, or other removable insignia on company purchased baseball caps.  This claim directly contradicts its statement before the Board that production employees could not attach union insignia to company baseball caps.  The Company stated that it "places limitations on accessories or adornments (including hats) when the restriction is necessary to comply with legitimate safety polices (e.g., no pins or buttons on the production floor that could fall into the equipment)."  (Company Brief in Support of Exceptions p. 17.)[4]  The Company's admission about the restrictions on adornments confirms the Board's view that the baseball-cap policy means what it says on its face: employees are prohibited from wearing union insignia.

---

[3]  When an employer's rule does not explicitly restrict Section 7 rights on its face, the rule will still violate Section 8(a)(1) upon a showing of any one of the following conditions: "'(1) employees would reasonably construe the language to prohibit Section 7 activity; (2) the rule was promulgated in response to union activity; or (3) the rule has been applied to restrict the exercise of Section 7 rights.'"  *Guardsmark*, 475 F.3d at 374 (quoting *Lutheran Heritage Village-Livonia*, 343 NLRB 646, 647 (2004)), *accord Cintas Corp. v. NLRB*, 482 NLRB 463, 467-68 (D.C. Cir. 2007).

[4]  With this brief, the Board is filing a motion to lodge the Company's Brief in Support of Exceptions.

The Company claims (Br. 12-13, 22-25) that the Board acted contrary to precedent by requiring the Company to demonstrate special circumstances to justify its policy.  This is puzzling because the special circumstances test was applied in the cases cited by the Company, and those decisions are not inconsistent with the Board's finding here.  In those cases, the Board found special circumstances in cases only where the employees had frequent contact with the public and the protected activity might harm customer relations.  The Board found no special circumstances where those factors were missing.  For example, in *Meijer*, 318 NLRB at 50, 56 (Br. 12, 20, 23-25), the Board applied the special circumstances test to find that an employer could not apply its dress code policy to prohibit employees from wearing union insignia, such as jackets, in areas that did not involve customer contact because there was no evidence of likely disruption or endangerment.  Likewise, here, the Board also reasonably found no such evidence that would justify the prohibition on union baseball caps among the production employees.  Although the *Meijer* Board also found that the employer could limit employees from wearing such insignia in customer service areas, here the "record is void of any real interactions between employees and customers."  (D&O 9.)

Similarly, in other cases cited by the Company (Br. 11-12, 23, 24), the Board applied the special circumstances test and found special circumstances only where the employees engaged in frequent contact with the public.  *See NLRB v. Starbucks Corp.*, 679 F.3d 70, 72, 77-79 (2d Cir. 2012) (court found, in

disagreement with the Board, that an employer could limit the number of union buttons worn by employees in public areas); *Produce Warehouse of Coram, Inc.*, 329 NLRB 915, 917-18 (1999) (employer could require an employee who wore a hat to wear the employer's hat based, in part, on his contact with the public); *Noah's New York Bagels, Inc*., 324 NLRB 266, 275 (1997) (employer could not prohibit delivery drivers from wearing union buttons, but could lawfully enforce its policy of requiring those drivers to wear the employer's t-shirts rather than t-shirts that mocked the employer); *Burger King Corp.*, 725 F.2d 1053, 1055 (6th Cir. 1984) (court, in disagreement with the Board, found that the employer could lawfully prohibit employees from wearing union buttons in public). [5]

Likewise, the Company's reliance (Br. 24) on *Sears Roebuck & Co.*, 300 NLRB 804, 806-10 (1990), *enforced* 957 F.2d (2d Cir. 1992), is misplaced because it involved the disparate application of a hat policy. In that case, the validity of the hat policy was unchallenged, but because the policy promoted uniformity of dress for customer service purposes, the employer's discipline of union activists for failing to abide by the hat policy, while ignoring others who disobeyed the policy, violated the Act. That case is readily distinguishable from the Board's finding here that the policy itself was overbroad.

---

[5]  In subsequent Sixth Circuit cases, the Court has distanced itself from the holding in *Burger King* that mere employee contact with the public permits an employer to restrict union insignia.  *See NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945, 958-60 (6th Cir. 2000).

The Company's attempt to escape the special circumstances test by claiming (Br. 23, 26-27) that the Board is simply second guessing its business judgment is equally unavailing. As this Court has recognized, it is not enough for an employer to have a legitimate business objective for an overbroad rule that infringes on protected activity, it must establish a "special circumstance." *Guardsmark,* 475 F.3d at 378. As discussed above, the Board found that the Company failed to establish special circumstances that justified its policy.

The Company fares no better by arguing throughout its brief (Br. 17-24) that the baseball-cap policy was part of a lawful uniform policy and, that had the Board read the Company's policies in that context, the baseball-cap policy could be lawful. As explained below, the Board reasonably rejected that argument. First, the Company's claim that the uniform policy is lawful mischaracterizes the record evidence. Next, the Board properly read the policies in context when determining that the cap policy was not part of the uniform policy. And finally, the Board determined that even if the policy were part of the Company's uniform policy, it was still required to demonstrate special circumstances for the hat policy and failed to do so.

As an initial matter, the Company mischaracterizes the General Counsel's position before the administrative law judge concerning the Company's shirt and pant uniform policy by stating (Br. 5, 25) that the "Government conceded that the uniform policy is lawful." The Company is incorrect. At the hearing before the

administrative law judge, counsel for the General Counsel argued: (1) that the Company's "prohibition on all headgear except for [company] baseball caps is unlawful" because it restricts Fernley employees' Section 7 rights; (2) that the baseball cap policy was not part of the uniform; and (3) that the General Counsel was not challenging the requirement that the employees wear a uniform because the uniform policy "has never been at issue" and was not part of the complaint. (Tr. 25, 38, 133-34.)  Moreover, as the Company acknowledged (Tr. 31), there is no evidence that the uniform policy was ever at issue in the case.  Because the uniform policy was neither alleged nor litigated, the Board did not address whether it was lawful.

The Board also reasonably found (D&O 1 n. 3, 8), that the Company's policy requiring only Company-logo baseball caps was separate and distinct from its uniform policy.  As the Board explained, (D&O 8), the two polices are set forth in distinct parts of the Guidelines.  The baseball-cap policy is specifically set forth as a safety policy under "Protecting Our Employees and Our Facilities," while the uniform policy is under the Company's set of working conditions in the "Expectations" section and specifically under the heading "uniforms."  Similarly, the Company separated the policies in its memo "Employee Q&A about Uniforms and PPE" (JTX 5), first setting forth information about the uniform policy, and then separately setting forth the baseball-cap policy as part its "the safety precautions."

Consistent with the Company's Guidelines and other printed material, Ott acknowledged (Tr. 209-10, 220) that the baseball-cap policy was "best" placed in the safety section of the Guidelines because "safety is such a priority." Moreover, additional testimony from Ott established that the baseball-cap policy was developed by the safety, security, and human resources departments with an "emphasis on safety," such as securing an employee's hair safely to the employees head, and alleged security concerns regarding gang insignia and symbolism. (D&O 7; Tr. 204-10.) In light of the Company's own documents, and Ott's testimony, the Board reasonably concluded (D&O 8) that the baseball-cap policy was not a part of the dress code or, as Ott asserted (Tr. 207), an attempt to align the hats with the uniform policy from a "presentation viewpoint."

Although the Company suggests (Br. 21-22) that the Board ignored evidence that the baseball-cap policy was part of its uniform policy, its claim lacks any evidentiary support. Thus, the Company offers no specific record cites to support its contention (Br. 21-22) that the Fernley employees received a memo that "specifically stated that the hats are part of the uniform." Rather, the testimony cited in the Company's brief (Br. 22, Tr. 63) references an employee discussing the baseball-cap policy under prior ownership. Moreover, contrary to the Company's claim (Br. 22), counsel for the General Counsel did not stipulate that the baseball-cap policy was intended to be part of the uniform policy. Rather, counsel simply

stipulated that the uniform policy had not changed since the Company issued its Guidelines.  (Tr. 236-38.)

The Company's reliance (Br. 20) on *Aroostook County Regional Ophthalmology Ctr.*, 81 F.3d 209 (D.C. Cir. 1996), is misplaced.  In that case, the Court faulted the Board for not reading the two rules they were examining in the context of the preceding language in the policy (not in the context of each rule's relationship to the other as the Company suggests).  However, as this Court explained in *Guardsmark*, the *Aroostook* Court found that the rules were not likely to chill Section 7 activity and noted that if the employer interpreted them in this way, the employees could file charges against the employer.  *Guardsmark*, 475 F. 3d at 376.

In any event, as the Board noted (D&O 1 n.3), even accepting the Company's argument that the baseball-cap policy is part of the uniform policy, the Board would still find a statutory violation here because the Company failed to establish special circumstances to justify the prohibition on wearing union insignia on the hats.  As the Board stated, "an employer cannot avoid the 'special circumstances' test simply by requiring its employees to wear uniforms or other designated clothing, thereby precluding the wearing of clothing bearing union insignia."  *See Great Plains Coca-Cola Bottling*, 311 NLRB at 515, and *Meijer*, 318 NLRB at 56–57.

Finally, there is no merit to the Company's contention (Br. 26-28) that the Board's remedy is overbroad. To the contrary, the remedy is tailored to the violation charged and limited to the Fernley facility where the issue emerged. Section 10(c) of the Act (29 U.S.C. § 160(c)) directs the Board, upon finding that a party has committed an unfair labor practice, to issue an order requiring the party "to cease and desist from such unfair labor practice and to take such affirmative action ... as will effectuate the policies of [the] Act." The Court will alter the Board's remedial decisions only if "it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Elec. & Power Co. v. NLRB,* 319 U.S. 533, 540, (1943); *accord Guardsmark*, 475 F. 3d at 381.

Here, the Board's Order can hardly be characterized as an abuse of its remedial discretion as it simply directs the Company to rescind the overbroad baseball-cap policy at its Fernley facility, and recognizes that the Company could notify the employees of a new lawful policy. *See Guard Publ'g Co.*, 351 NLRB 1110, 1121 (2007) (remedy required employer to rescind an overly broad rule that prohibited employees from wearing or displaying union insignia), *enforced in relevant part* 571 F.3d 53 (D.C. Cir. 2009); *Albertsons, Inc.*, 351 NLRB at 262 (remedy required employer to rescind an overly broad rule that required employer authorization for wearing union badges or pins by employees); *Guardsmark, LLC*, 344 NLRB 809, 811 (remedy required employer to rescind the handbook

provisions prohibiting employees from registering complaints regarding their

wages, hours, or conditions of employment with the employer's), *enforced in*

*relevant part* 475 F.3d 369 (D.C. Cir. 2007). The particular language of any such

policy is properly left for compliance. *See generally*, *Coronet Foods, Inc. v.*

*NLRB*, 981 F.2d 1284, 1288 (D.C. Cir. 1993) (explaining that an employer "has an

opportunity to show current hardship as cause for modification of the remedy at the

compliance stage"); *NLRB v. Rockwood Energy & Mineral Corp*., 942F.2d 169,

176 (3d Cir. 1991) (identity of employees to be made whole and amount of

backpay often left to compliance).

## CONCLUSION

The Board respectfully requests that the Court enter a judgment denying the

Company's petition for review and enforcing the Board's Order in full.

/s/Jill A. Griffin
JILL A. GRIFFIN
*Supervisory Attorney*

/s/David A. Seid
DAVID A. SEID
*Attorney*
*National Labor Relations Board*
1099 14th Street NW
Washington DC  20570
(202) 273-2949
(202) 273-2941

RICHARD F. GRIFFIN, JR.
        *General Counsel*

JENNIFER ABRUZZO
        *Deputy General Counsel*

JOHN H. FERGUSON
        *Associate General Counsel*

LINDA DREEBEN
        *Deputy Associate General Counsel*

NATIONAL LABOR RELATIONS BOARD
July 2014

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| WORLD COLOR (USA) CORP., A WHOLLY OWNED SUBSIDIARY OF QUAD GRAPHICS, INC. | ) ) ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) ) | Nos. 14-1028, 14-1037 |
| v. | ) ) | |
| NATIONAL LABOR RELATIONS BOARD | ) ) | |
| Respondent/Cross-Petitioner | ) ) ) | Board Case No. 32-CA-62242 |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the Board

certifies that its brief contains 6,157 words of proportionally-spaced, 14-point type,

and the word processing system used was Microsoft Word 2007.


/s/Linda Dreeben
Linda Dreeben
Deputy Associate General Counsel
National Labor Relations Board
1099 14th Street, NW
Washington, DC 20570
(202) 273-2960


Dated at Washington, DC
this 11th day of July, 2014

# STATUTORY ADDENDUM

NATIONAL LABOR RELATIONS ACT

Also cited NLRA or the Act; 29 U.S.C. §§ 151-169

[Title 29, Chapter 7, Subchapter II, United States Code]

RIGHTS OF EMPLOYEES

Sec. 7. [§ 157.] Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3) [section 158(a)(3) of this title].

UNFAIR LABOR PRACTICES

Sec. 8. [§ 158.] (a) [Unfair labor practices by employer] It shall be an unfair labor practice for an employer--

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [section 157 of this title];

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .;

(5) to refuse to bargain collectively with the representatives of his employees . . . .

PREVENTION OF UNFAIR LABOR PRACTICES

Sec. 10. [§ 160.] (a) [Powers of Board generally] The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair

labor practice (listed in section 8 [section 158 of this title]) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominately local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act [subchapter] or has received a construction inconsistent therewith.

(c) [Reduction of testimony to writing; findings and orders of Board] The testimony taken by such member, agent, or agency, or the Board shall be reduced to writing and filed with the Board. Thereafter, in its discretion, the Board upon notice may take further testimony or hear argument. If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without backpay, as will effectuate the policies of this Act [subchapter]: Provided, That where an order directs reinstatement of an employee, backpay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him: And provided further, That in determining whether a complaint shall issue alleging a violation of section 8(a)(1) or section 8(a)(2) [subsection (a)(1) or (a)(2) of section 158 of this title], and in deciding such cases, the same regulations and rules of decision shall apply irrespective of whether or not the labor organization affected is affiliated with a labor organization national or international in scope. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of

any backpay, if such individual was suspended or discharged for cause. In case the evidence is presented before a member of the Board, or before an administrative law judge or judges thereof, such member, or such judge or judges, as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become affective as therein prescribed.

(e) [Petition to court for enforcement of order; proceedings; review of judgment] The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceeding, as provided in section 2112 of title 28, United States Code [section 2112 of title 28]. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to question of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall

file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of title 28.

(f) [Review of final order of Board on petition to court] Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28, United States Code [section 2112 of title 28]. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

WORLD COLOR (USA) CORP., A WHOLLY    )
OWNED SUBSIDIARY OF QUAD GRAPHICS,  )
INC.                                 )
                                     )
    Petitioner/Cross-Respondent    )     Nos. 14-1028, 14-1037
                                     )
    v.                              )
                                     )
NATIONAL LABOR RELATIONS BOARD       )
                                     )     Board Case No.
    Respondent/Cross-Petitioner     )     32-CA-62242
                                     )

### CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2014, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the District

of Columbia Circuit by using the appellate CM/ECF system.

I certify the foregoing document was served on all those parties or their

counsel of record through the CM/ECF system if they a registered user or, if they

are not by serving a true and correct copy at the address listed below:

        Ellen Marie Bronchetti, Esquire, Attorney
        Sheppard Mullin Richter & Hampton LLP
        Four Embarcadero Center
        Seventeenth Floor
        San Francisco, CA 94111-4106

Ronald John Holland, II, Esquire, Attorney
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA 94111-4106


/s/Linda Dreeben
Linda Dreeben
Deputy Associate General Counsel
National Labor Relations Board
1099 14th Street, NW
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 11th day of July, 2014