## NOS. 14-1028(L); 14-1037 XAP

**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

𝔍𝔫 𝔗𝔥𝔢

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

𝔉𝔬𝔯 𝔗𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

# WORLD COLOR (USA) CORP., a wholly owned subsidiary of QUAD/GRAPHICS, INC.,

*Petitioner/Cross–Respondent*,

**v.**

# NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross–Petitioner*.

## ON APPEAL FROM THE NATIONAL LABOR RELATIONS BOARD

_____

### REPLY BRIEF OF PETITIONER/CROSS–RESPONDENT

_____

**Ronald J. Holland (Bar No. 55268)**
**Ellen M. Bronchetti (Bar No. 55264)**
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
  **A Limited Liability Partnership**
  **Including Professional Corporations**
**4 Embarcadero Center, 17th Floor**
**San Francisco, California 94111**
**(415) 434-9100**

*Counsel for Petitioner/Cross–Respondent*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY ............................................................................................. v

STATUTES AND REGULATIONS ....................................................1

SUMMARY OF ARGUMENT ............................................................1

ARGUMENT ..........................................................................................2

    A.    Employees Do Not Have An Unfettered Right To Wear Union Hats In The Workplace ........................................................2

        1.    The Board's Holding Is Not Supported By Established Precedent ....................................................................2

        2.    The Board Improperly Applied The Legal Standard That Applies To The Wearing Of Union Buttons, Not Hats ..............4

        3.    The Board's Order Would Prevent Employers From Establishing Any Dress Code Without First Proving Special Circumstances ..............................................6

    B.    World Color's Hat Policy Is Not Overbroad........................................6

        1.    The Special Circumstances Test Does Not Apply......................7

        2.    The Hat Policy Does Not Ban Hats "Bearing Union Insignia" ....................................................................8

        3.    Nothing In Its Exceptions Brief Limits World Color's Arguments ..................................................................9

        4.    World Color's Citation To Cases That Mention Special Circumstances Does Not Change The Applicable Standard ....................................................................10

i

5.      The Hat Policy, When Considered As Part Of The Dress Code, Is Lawful Without A Showing Of Special Circumstances ...........................................................................11

6.      The Hat Policy Has Not Infringed On Employees' Section 7 Rights .......................................................................15

C.      Public Policy Dictates That The Board's Order Must Be Reversed ...............................................................................16

CONCLUSION .................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albertson's, Inc.*,
   351 NLRB 254 (2007) ....................................................................5

*\*Aroostook County Regional Ophthalmology v. NLRB*,
   81 F.3d 209 (D.C. Cir. 1996)...........................................12, 13, 14

*\*Burger King Corp v. NLRB*,
   725 F.2d 1053 (6th Cir. 1984) ......................................................7

*Goodyear Tire & Rubber Co.*,
   357 NLRB No. 38 (2011) ..........................................................3, 4

*Great Plains Coca-Cola Bottling Co.*,
   311 NLRB 509 (1993)...............................................................7, 11

*Guard Publishing Co. v. NLRB*,
   571 F.3d 53 (D.C. Cir. 2009)....................................................3, 11

*Guardsmark, LLC, v. NLRB*,
   475 F.3d 369 (D.C. Cir. 2007).......................................................5

*Mail Contractors of America v. NLRB*,
   514 F.3d 27 (D.C. Cir. 2008).................................................3, 5, 11

*\*Martin Luther Memorial Home, Inc.*,
   343 NLRB 646 (2004) ...........................................................12, 15

*\*Meijer, Inc. v. NLRB*,
   318 NLRB 50 (1995), *aff'd*,
   130 F.3d 1209 (6th Cir. 1997) ..............................4, 6, 7, 10, 11, 16

*\*Chief Authorities are Designated by an Asterisk*

*NLRB v. Starbucks Corp.*,
    679 F.3d 70 (2d Cir. 2012) ....................................................................9, 10

*Noah's New York Bagels*,
    324 NLRB 266 (1997) ....................................................................................5

*P.S.K. Supermarkets, Inc.*,
    349 NLRB 34 (2007) ......................................................................................5

*Produce Warehouse of Coram, Inc.*,
    329 NLRB 915 (1999) ............................................................2, 3, 4, 6, 9, 16

*Republic Aviation Corp. v. NLRB*,
    324 U.S. 793 (1945).............................................................................5, 7, 11

*Sears Roebuck & Co.*,
    300 NLRB 804 (1990) .......................................................................7, 8, 11

**STATUTE**

29 U.S.C. § 157 ................................................................1, 2, 3, 6, 15, 16

# GLOSSARY

| | |
|---|---|
| **Board** | The National Labor Relations Board, Respondent and Cross-Petitioner in this case. |
| **Board's Brief** | The brief filed in this Court by the National Labor Relations Board in these proceedings on or about July 11, 2014. |
| **Employee Guidelines** | Quad/Graphics, Inc.'s Employee Guidelines for U.S. Employees, which set forth the policies and procedures governing the employment of all Quad/Graphics, Inc.'s employees in the United States, including employees of Petitioner World Color (USA) Corp. |
| **Hat Policy** | Part of Petitioner's uniform policy that was challenged by the Government and was the subject of the hearing before the National Labor Relations Board that led to the instant Petition for Review. Quad/Graphics, Inc. implemented the hat policy as part of its uniform policy at all of its facilities nationwide, including the World Color (USA) Corp. facility. |
| **Order or Board's Order** | Decision issued by the National Labor Relations Board on February 12, 2014, which is the subject of this Petition for Review. |
| **Quad** | Quad/Graphics, Inc., of which Petitioner World Color (USA) Corp. is a wholly-owned subsidiary. |
| **Section 7** | Section 7 of the National Labor Relations Act, 29 U.S.C. § 157. |
| **World Color** | Petitioner World Color (USA) Corp. |

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in Petitioner's Opening Brief and/or the brief filed in this Court by Respondent, the National Labor Relations Board, on or about July 11, 2014.

## SUMMARY OF ARGUMENT

Employees do not have an unfettered right to wear union hats in the workplace, a fact which the Board seems to have ignored both in issuing the Order which is the subject of these proceedings and in preparing its brief for this Court. *Not one case* cited by the Board stands for this proposition, and for good reason: neither the Board nor the federal courts have ever held that Section 7 extends so far as to allow an employee to disregard a Company's non-discriminatory uniform policy or dress code and to wear union attire *in place of* a required uniform. The body of federal case law, including the Board's own cases, firmly establishes that the special circumstances analysis is only applicable to situations in which the employer's policy explicitly prohibits employees from wearing union insignia in the workplace. This is simply not the case here, and the Board's application of the special circumstances analysis is therefore reversible error. Because the Board has misapplied long-standing Board precedent without any justification, its Order must be set aside.

## ARGUMENT

### A.    Employees Do Not Have An Unfettered Right To Wear Union Hats In The Workplace.

The Board failed to identify legal precedent for its position that employees have an unfettered right to wear union hats in the workplace.  Rather, the Board relies on a handful of cases which stand for the general and undisputed proposition that employees have a Section 7 right to wear union insignia at work; all of those cases are distinguishable from the case at bar.  The fact remains that the Board has *never* held that employees have a *per se* statutory right to wear union hats in place of an employer's uniform hat, and it cites no authority in its brief to the contrary.

#### 1.    The Board's Holding Is Not Supported By Established Precedent.

The Board has never before held that employees have a Section 7 right to wear union hats in the workplace, and the cases it cites in its brief do not hold otherwise.  For example, *Produce Warehouse of Coram, Inc.*, 329 NLRB 915 (1999), the only case cited by the Board which involved the issue of an employer's hat policy, does not stand for the proposition for which it is cited in the Board's brief—namely, that the right to wear union insignia at work extends to union hats. To the contrary, that case distinguishes between, on the one hand, a union button or pin, and (on the other hand) a union hat.   In contrasting the two, the ALJ held that

> where the item involved is a hat which includes union insignia, which is clearly not small or unobtrusive [as opposed to a pin], *such displays*

> *can lawfully be prohibited by an employer, pursuant to the enforcement of an established and nondiscriminatory uniform rul*e.

*Id.* at 918 (emphasis added).  Ultimately, the Board upheld the ALJ's decision that the employer's uniform policy—which provided that employees who chose to wear hats must wear company hats—was lawful and did not violate the Act.[1]  *Id.* at 915, 918.  The Board, in its brief, failed to explain its departure from this precedent in its decision in the proceedings below.  *See Mail Contractors of America v. NLRB*, 514 F.3d 27, 31 (D.C. Cir. 2008) (Court will set aside an order of the Board when the Board departs from precedent "without reasoned justification.").

The Board also failed to cite any other authority in support of its claim that the right to wear "union insignia" actually means an absolute right to wear union *hats*.  The only other cases it cites for this proposition are *Guard Publishing Co. v. NLRB*, 571 F.3d 53 (D.C. Cir. 2009), and *Goodyear Tire & Rubber Co.*, 357 NLRB No. 38 (2011).  Neither of these cases addressed the issue presented in this matter.  In *Guard Publishing*, the employer discriminatorily enforced a practice of prohibiting union insignia even in the absence of a uniform policy.  571 F.3d at 56,

---

[1] Contrary to the Board's claim, while the ALJ made mention of the special circumstances test in the *Produce Warehouse* opinion, no real consideration of the test appears in his decision.  Rather, the ALJ held that in balancing "the potentially conflicting interests" of an employee's Section 7 rights and an employer's rights, one of the "more significant factors" is what type of union insignia is at issue, such as a pin versus a hat.  In finding that a hat is inherently different from a union pin, the ALJ held that an employer may prohibit the former so long as it is pursuant to an "established and nondiscriminatory uniform rule."  329 NLRB at 918.

61. Similarly, in *Goodyear Tire*, the employer directed employees to remove their union t-shirts when the employees had, in the past, been permitted to wear other shirts in violation of the employer's dress code policy. 357 NLRB No. 38, slip op. at 31. Neither case is applicable here, as neither is related to the issue before this Court—whether employees have a statutory right to wear a union hat regardless of the employer's reasonable, non-discriminatory work rules. In sum, the Board's holding is without any past precedent or supporting authority. There is no justification for the Board's determination that employees have a statutory right to wear union hats in the workplace.

### 2. The Board Improperly Applied The Legal Standard That Applies To The Wearing Of Union Buttons, Not Hats.

The Board applied the wrong legal standard in analyzing the hat policy by relying on case law pertaining to the wearing of union buttons in the workplace, rather than union hats. The Board's brief appears to equate the former with the latter, which is simply not the law, as recognized by the Board itself on numerous occasions. For example, in *Meijer, Inc*., 318 NLRB 50, 57 (1995), *aff'd*, 130 F.3d 1209 (6th Cir. 1997), the Board affirmed the ALJ's ruling that "[t]he wearing of hats and coats bearing the union's name and/or logo . . . stands on different footing" than the wearing of union pins or buttons. Similarly, in *Produce Warehouse*, 329 NLRB at 918, the Board distinguished between an employee's wearing a small union pin (found to be protected activity) and one wearing "a hat

4

which includes union insignia, which is clearly not small or unobtrusive" (and not protected activity)  *See also Noah's New York Bagels*, 324 NLRB 266, 275 (1997) (holding that while an employer could prohibit an employee from replacing a company uniform t-shirt with a union t-shirt, it could not prohibit the employee from wearing union buttons).

These cases firmly establish that the Board applies different standards to union buttons or pins and union hats.  However, in this case, the Board improperly applied the standard applicable to buttons to World Color's hat policy.  Even a cursory review of the cases cited in the Board's brief illustrates this point: *Republic Aviation v. NLRB*, 324 U.S. 793 (1945) (employer violated the Act by discharging employees for wearing union buttons in plant); *Albertson's, Inc*., 351 NLRB 254 (2007) (employer's rule regarding union pins unlawful); and *P.S.K. Supermarkets, Inc*., 349 NLRB 34 (2007) (employer's policy prohibiting union buttons and pins violated the Act); *see also Guardsmark, LLC v. NLRB*, 475 F.3d 369 (D.C. Cir. 2007) (employer's rules relating to solicitation, employee complaints and fraternization found unlawful).  Clearly, the Board failed to take into account the difference between a union button and a union hat, and applied the incorrect legal standard in issuing its Order.  *See Mail Contractors of America*, 514 F.3d at 31 (Court will set aside an order of the Board when the Board applies the wrong legal standard).  Therefore, the Order cannot stand.

### 3.    The Board's Order Would Prevent Employers From Establishing Any Dress Code Without First Proving Special Circumstances.

The Board's Order redefines employees' rights under Section 7 of the Act with the unjustifiable result that an employer is prohibited from enacting a policy that prohibits baseball caps in the workplace, even if it applies equally to all non-company hats, unless it can demonstrate special circumstances to justify its rule. Moreover, by the Board's reasoning, no employer can enact a neutral dress code policy in the absence of special circumstances.  This is a significant extension of the current law and one that ignores the balance that the Board must strike between employees' right to self-organization and an employer's right to govern its employees.  *See Meijer, Inc., v. NLRB*, 130 F.3d 1209, 1212 (6th Cir. 1998); *Produce Warehouse*, 329 NLRB at 918.   Accordingly, the Board's Order must be set aside.

### B.    World Color's Hat Policy Is Not Overbroad.

The Board erred in holding that Work Color's hat policy—whether considered on its own or as part of the Company's uniform policy—is overbroad, as it does not on its face prohibit employees from engaging in any activity protected by Section 7.  Nothing in the Board's brief or the record demonstrates otherwise.  Accordingly, the special circumstances test does not apply, and the Board's Order must be reversed.

### 1.      The Special Circumstances Test Does Not Apply.

Because World Color's hat policy does not prohibit employees from wearing union insignia, the special circumstances test does not apply.   An employer may require its employees to wear uniforms that include a Company hat without a showing of special circumstances as long as the employer does not prohibit employees from wearing union insignia.  *See Burger King Corp v. NLRB*, 725 F.2d 1053 (6th Cir. 1984) (no violation of the Act where employer consistently enforced a policy requiring the wearing of uniforms only with authorized name tags).  The special circumstances showing only comes into play where an employer's non-discriminatory dress code[2] prohibits employees from displaying union insignia at work; then, the employer must establish special circumstances justifying the prohibition.  *See Republic Aviation*, 324 U.S. at 801-03.  To repeat, the special circumstances analysis is required *only* if a uniform policy bans the wearing of union insignia.  *Sears Roebuck & Co.*, 300 NLRB 804, 807 (1990); *Great Plains Coca-Cola Bottling Co*., 311 NLRB 509, 515 (1993); *Meijer, Inc*., 318 NLRB at 56; *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801-03 (1945).

The Board's claim that *Sears Roebuck* is not on point here is unavailing. Like World Color, the employer in that case had in place a uniform policy which included a requirement that any hat that the employees chose to wear must be a

---

[2] The Board does not allege that the hat policy has been applied in a discriminatory fashion.  (*See* J.A. 45:18-47:1, 137 n.1.)

7

company hat. 300 NLRB at 806-07. The Board is correct that in that case the General Counsel conceded that the policy was lawful—which is notable given the striking similarities between that policy and the one at issue in these proceedings. *Compare id*. at 806-07 *and* J.A. 112-113, 117. Moreover, referring to the company's rules pertaining to uniforms and hats, the ALJ in that case specifically noted that "Respondent's rules are not in issue. *They are valid.*" 300 NLRB at 807 (emphasis added). At no point in the decision did the *Sears Roebuck* Board consider the issue, as the Board's brief here claims, of whether "the policy promoted uniformity of dress for customer service purposes."

## 2. The Hat Policy Does Not Ban Hats "Bearing Union Insignia."

In this case, the Board erred in holding that World Color's policy is overbroad because it prohibits the employees from wearing baseball caps "bearing union insignia" for the simple reason that the policy contains no such ban. The hat policy *does not prohibit employees from displaying union insignia*, but simply states that "baseball caps are prohibited except for Quad/Graphics baseball caps." (J.A. 117.) Although employees are prohibited from replacing the Company hat with a hat of their own choosing, including a union hat, nothing in the policy prevents an employee from securing their hair to their heads using, for example, a headband, hair tie, or ribbon, which may be any color and display a logo of the employee's choosing—including a union logo. (*See generally* J.A. 107-123.)

8

Where an employer "adequately maintains the opportunity to display prounion sentiment" by allowing employees to wear union insignia, but places reasonable restrictions on the amount or type of insignia that may be worn, the employer has not violated the Act. *NLRB v. Starbucks Corp.*, 679 F.3d 70, 78 (2d Cir. 2012); *Produce Warehouse*, 329 NLRB at 918. As detailed above, the Board failed to cite to *any precedent* supporting its decision that employees have an inviolable Section 7 right to wear union hats even when, as in this case, it is undisputed that the employees can wear other union insignia. Its holding is thus contrary to the precedent established by *Starbucks* and *Produce Warehouse*.

### 3. Nothing In Its Exceptions Brief Limits World Color's Arguments.

There is no merit to the Board's claim that a statement in World Color's Exceptions Brief precludes it from arguing that employees may wear union insignia at work. In its Exceptions Brief (which the Board lodged in the record), World Color in fact pointed out the fallacy of the Board's argument—namely, that no evidence was presented at the hearing that any employee has *ever* been prohibited from wearing union insignia at work. (Exceptions Brief at 16-17; J.A. 137.) The Board also failed to assert the argument (or to produce any evidence) at the hearing that World Color's jewelry policy—which does not mention buttons or pins at all—somehow precludes World Color from demonstrating that employees may wear union insignia at work. (*See generally* J.A. 9-89; 117.) In addition, the

applicable legal standard in this case is whether the hat policy, *as written*, is overbroad and prohibits protected activity.  If it is necessary for the Board to look to outside evidence to determine the policy's complicity  with the Act, then clearly the language of the policy is not overbroad on its face.  Moreover, even if it were the case that a production employee could not wear a union pin on the floor for safety reasons, it does not follow that the employee is unable to wear union insignia—such as a belt buckle, an earring, or a sticker—at work *at all*, which is the standard set by *Starbucks*.  *See Starbucks Corp.*, 679 F.3d at 78.  The Board's argument is a red herring and does not change the fact that the Board's decision is not consistent with the law and must be reversed.

### 4.    World Color's Citation To Cases That Mention Special Circumstances Does Not Change The Applicable Standard.

World Color's reference to cases involving the special circumstances analysis does not, as the Board appears to claim, operate to change the applicable legal standard that the Board was required to apply here.  The only such case identified by the Board on which World Color relied for any relevant proposition is *Meijer, Inc.*, *supra*.  In *Meijer*, the employer had a facially invalid practice of prohibiting employees from wearing union pins in its stores, while at the same time allowing them to wear other nonunion pins, such as United Way pins, on their uniforms.  318 NLRB at 50, 52.  The Board conducted the special circumstances analysis to determine whether this ban on union buttons violated the Act.  *Id*. at 50-

51.  With regard to the wearing of union hats, however, the Board affirmed the ALJ's holdings that (1) wearing union hats "stands on different footing" than union pins, and (2) the employer's requiring the employees to wear company-only hats made the hats "part of the uniform" and was lawful under the Act.  *Id*. at 50-51, 57. Notably, in the section of the *Meijer* opinion addressing union hats, the ALJ does not once mention special circumstances.  *Id*. at 57.

The Board's Order must be reversed because, contrary to the law, it improperly requires that World Color establish special circumstances for its hat policy *even in the absence* of any prohibition on union insignia.  *See Republic Aviation*, 324 U.S. at 801-803; *Sears Roebuck & Co.*, 300 NLRB at 807; *Coca-Cola Bottling Co*., 311 NLRB at 515; *Meijer, Inc.*, 318 NLRB at 56 (1995).  This is an unjustified departure from past precedent that cannot stand.  *See Mail Contractors of America*, 514 F.3d at 31.

### 5.    The Hat Policy, When Considered As Part Of The Dress Code, Is Lawful Without A Showing Of Special Circumstances.

The Board also incorrectly concluded that World Color's hat policy is a separate and distinct policy from the uniform policy.  The Court must overturn the Board's factual conclusions if they are not supported by "substantial evidence." *Guard Publishing*, 571 F.3d at 59.  Here, substantial evidence does not support the Board's finding that the hat policy is not part of World Color's overall uniform policy.  The Board's only justification for its finding is that the two parts of the

11

uniform policy are set forth on different pages of the Employee Manual and were "separated" in a memo World Color distributed to employees.  (Board's Brief at 23.)  This is not sufficient, in light of the applicable precedent, to support this factual finding.

When assessing the lawfulness of work rules, the Board must "give the rule a reasonable reading . . . it must refrain from reading particular phrases in isolation."  *Martin Luther Memorial Home, Inc.*, 343 NLRB 646, 646 (2004).  This Court has recognized the importance of taking context into account when determining whether an employer's work rule violates the NLRA.  *See Aroostook County Regional Ophthalmology v. NLRB*, 81 F.3d 209 (D.C. Cir. 1996).   In *Aroostook County*, two work rules were at issue, one which prohibited employees from discussing office business with their families or friends and the other which forbade them from raising grievances within hearing distance of the employer's patients.  *Id*. at 211.  Cautioning the Board to abstain from reading the rules out of context—including the context of other language in the manual—the Court held:

> Once again, the Board has imagined horrible hypothetical situations (which if true, might violate the Act) that have nothing much to do with the rule as written and enforced by the Company.  Even worse, in assessing [the Company's] rules, the Board has failed to properly take account of the employment context in which this case arises.

*Id.* at 213.  In addition, the Court noted, there was no evidence that the employees were ever actually constrained in the exercise of a protected right, and they had

12

"obvious and numerous" opportunities to exercise those rights even with the work rules in place. *Id.* at 212-14.

Here, like in *Aroostook County*, the Board failed to provide reasonable context to World Color's rules. The context of the rules makes it clear that the hat policy is merely a subset of the uniform policy. For example, the general uniform policy states that "certain positions may have additional or different uniform requirements" and makes clear that position-specific uniform requirements may be, and are, addressed in other sections of the Employee Guidelines. (J.A. 113.) The hat policy, which applies to the production floor employees, is one such requirement. (J.A. 76:7-20.) The policy was included in the safety section of the Employee Guidelines due to the function of the hat—namely, securing employees' hair to their heads for safety reasons, while maintaining the uniform appearance of employees. (*See* J.A. 85:17-20, 88:4-11.) Other uniform requirements listed in the safety section of the Guidelines (such as safety shoes or boots, rather than open-toed shoes) are also part of World Color's general dress code. (J.A. 117-118.) The Board improperly deviated from precedent when it failed to consider this context as required under *Aroostook County*. Moreover, the Board's failure to do so leads to the absurd result of the Board having the authority to determine how many pages may appear between two provisions in an employer's handbook before the provisions are deemed to be separate policies.

The Board's attempt to avoid the application of *Aroostook County* to this case is without merit.  The Board itself admits that *Aroostook* prohibits the Board from reading an employer's work rule in isolation; rather, as the Board points out, it must take the rule's context into consideration. Moreover, the Board fails to address at all the fact that in *Aroostook County* this Court found that the employer's rules did not violate the Act at least in part because (1) they had never been interpreted or applied by the employer in such a way as to prohibit protected activity, and (2) the employees had "obvious and numerous" other opportunities to engage in such activity.  81 F.3d at 212-14.  Both are similarly true here.

In addition, the hat policy was intended to be, and is regarded as, part of the uniform policy. For example, the Government's own witness testified at the hearing that employees could "check off" on a standard form to indicate what parts of the uniform they wanted, including "shirts, hats, whatever."  (J.A. 30:24-31:4.) That witness also confirmed that he believed the hat was part of the uniform policy.  (J.A. 27:13-20.)  Last, a policy memorandum distributed to the employees indicated that the hat policy was part of the uniform policy.  (J.A. 134-136.)

In finding the hat policy separate from the uniform policy, the Board improperly read the hat policy out of context and without regard to the "reality of workplace" analysis in which it was required to engage under *Aroostook County*. This is an improper deviation from precedent that is not supported by substantial

14

evidence, and the Board's conclusion that World Color's hat policy is not part of its uniform policy should be reversed.

### 6.    The Hat Policy Has Not Infringed On Employees' Section 7 Rights.

There is no evidence whatsoever that the hat policy infringed on employees' Section 7 rights.  As the Board admits in its brief (Respondent's Brief at 18), in the absence of an explicit prohibition on union insignia, the proper standard to be applied in order to determine if a work rule is unlawfully overbroad is whether (1) the rule has been applied to restrict the exercise of Section 7 activity; (2) employees would reasonably construe the language to prohibit Section 7 activity; or (3) the rule was promulgated in response to Section 7 activity.  *Martin Luther*, 343 NLRB at 647.  The Board erred by not applying this standard in its analysis of World Color's rule, since the policy—as explained above—does not restrict employees from engaging in *any* Section 7 activity.  The Board does not dispute that: (1) no actual interference, coercion, or restraint in employees' exercise of their Section 7 rights has occurred; (2) the hat policy has not been discriminatorily applied; (3) no employee ever attempted to wear union logos or insignia in the workplace and was denied that opportunity;[3] or (4) the rule was not enacted in response to Section 7 activity.  Therefore, because the Board failed to

---

[3] In fact, the policy itself states that it will "be applied in accordance with applicable laws" and provides a mechanism for employees to seek exceptions to the policy should they wish to do so.  (J.A. 112, 117.)

apply the correct legal standard to World Color's neutral, non-discriminatory dress code policy, the Board's holding must be reversed.

## C.   Public Policy Dictates That The Board's Order Must Be Reversed.

Public policy also dictates that the Board's Order must be reversed, as the Order expands employee Section 7 rights far beyond that supported by the applicable precedent and violates the balance the Board must strike between employees' right to organize and management's right to govern its employees. *See Meijer, Inc.*, 130 F.3d at 1212; *Produce Warehouse*, 329 NLRB at 918.

By ordering that World Color rescind its hat policy, the Board has improperly usurped World Color's right to maintain non-discriminatory policies as its business requires. This language suggests that World Color must either allow employees to wear any hat they would like, manufactured with any logo that they would like, or establish "special circumstances" that justify the policy. This Order, if affirmed, improperly usurps World Color's legitimate exercise of its lawful business judgment.

Moreover, the Board's Order leaves employers with virtually no guidance as to how to craft lawful uniform policies, even as it expands employees' Section 7 rights to mean that *no* employer may *ever* enact a uniform policy—even one that is non-discriminatory and is not motivated by union animus—unless the employer

16

can demonstrate special circumstances.  This is a significant and unjustified extension of the current law that cannot stand.

## CONCLUSION

Petitioner World Color respectfully requests that the Court reverse the Board's Order, as the Board failed to apply existing precedent to the facts of this case in a rational manner consistent with the Act.  The Board's holding that World Color's hat policy is overbroad contradicts established precedent that an employer may enact a non-discriminatory uniform policy without having to establish the existence of special circumstances.  In addition, the Board's Order is inconsistent with public policy.  For these reasons, the Board's Order must be set aside.

Dated:  August 15, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By       /s/ Ronald J. Holland
         SHEPPARD, MULLIN, RICHTER &
         HAMPTON LLP
           A Limited Liability Partnership
           Including Professional Corporations
         RONALD J. HOLLAND, Bar No. 55268
         ELLEN M. BRONCHETTI, Bar No. 55264
         4 Embarcadero Center, 17th Floor
         San Francisco, CA 94111
         Telephone: (415) 434-9100
         Facsimile: (415) 434-3947

         Attorneys for Petitioner WORLD COLOR
         (USA) CORP.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*4,249*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>August 15, 2014  </u>        <u>/s/ Ronald J. Holland                    </u>
                                                *Counsel for Petitioner/Cross–Respondent*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 15th day of August, 2014, I caused this Reply Brief of Petitioner/Cross–Respondent to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Linda Dreeben
Jill A. Griffin
David Allen Seid
NATIONAL LABOR RELATIONS BOARD
  (NLRB) Appellate and Supreme Court Litigation Branch
1099 14th Street, NW
Washington, DC 20570
(202) 273-2960

*Counsel for Respondent/Cross–Petitioner*

/s/ Ronald J. Holland
*Counsel for Petitioner/Cross–Respondent*